# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

AMBER PRICE

          Plaintiff

v.

GEORGE ROBERTS, individually and in his official capacity as Chief of Police for the Borough of Burgettstown, J. MICHAEL AARON, individually and in his official capacity as Chief Detective for Washington County, CHRISTOPHER J. NEAL, individually and in his official capacity as Trooper/Corporal or law enforcement official for the Pennsylvania State Police, AARON BORELLO, individually and in his official capacity as Trooper or law enforcement official for the Pennsylvania State Police, FRANK PAWLOWSKI, Commissioner of the Pennsylvania State Police, WASHINGTON COUNTY, the BOROUGH OF BURGETTSTOWN and STEVEN M. TOPRANI, District Attorney of Washington County, individually and in his official capacity,

          Defendants

CIVIL ACTION NO._____

Hon:_____

**CIVIL ACTION COMPLAINT AND REQUEST FOR A JURY TRIAL**

    AND NOW comes Plaintiff, Amber Price, by her undersigned counsel, Michael P. Petro, Esquire and Robert E. Mielnicki, Esquire and respectfully submits:

1

**JURISDICTION AND VENUE**

1.       This action to vindicate Plaintiff's rights protected by the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and under the common law and statutes of the Commonwealth of Pennsylvania is brought under 42 U.S.C. Sections 1983, 1985, 1986 and 1988. This Honorable Court has jurisdiction over this civil rights action under 28 U.S.C. Sections 1331 and 1343 and the pendent/supplemental jurisdiction of this Court to entertain claims arising under state law.

2.       Venue is proper in the Western District of Pennsylvania pursuant to 28 U.S.C. Section 1391(a) in that the Defendants are subject to personal jurisdiction within the Western District of Pennsylvania and the events that give rise to this action occurred within the Western District of Pennsylvania.

**PARTIES**

3.       Plaintiff, Amber Price, is an adult citizen of the United States and has an address of 6148 Noblestown Road, Oakdale, PA 15071. Plaintiff was, at all relevant times, except the period of time when she was removed from her position by or because of the acts of Defendants, a police officer for the Borough of Burgettstown, Pennsylvania, as well as other local municipalities.

4.       At all times material hereto, all Defendants were acting under color of law and, where specified or made clear by the averments of this pleading, jointly with each other.

5.      Defendant, George Roberts, was, at all relevant times, Chief of Police for the Borough of Burgettstown, Pennsylvania.   In his capacity as Chief of Police, Defendant Roberts had a legal obligation to act in conformity with the United States Constitution and applicable federal and state laws.   Defendant Roberts is named herein in his individual capacity and official capacity.   At all relevant times, Defendant Roberts was acting under color of law.   Defendant Roberts has a business address of 1509 Main Street, Burgettstown, PA 15021.

6.      Defendant, J. Michael Aaron, was, at all relevant times, Chief Detective for Washington County, Pennsylvania.   In his capacity as Detective, Defendant Aaron had a legal obligation to act in conformity with the United States Constitution and applicable federal and state laws.   Defendant Aaron is named herein in his individual capacity and official capacity.   At all relevant times, Defendant Aaron was acting under color of law. Defendant Aaron has a business address of Washington County Courthouse, Suite 1003, One South Main Street, Washington, PA 15301.

7.      Defendant, Christopher J. Neal, was, at all relevant times, a Trooper/Corporal or law enforcement official with the Pennsylvania State Police.   In his capacity as a Trooper/Corporal or law enforcement official, Defendant Neal had a legal obligation to act in conformity with the United States Constitution and applicable federal and state laws.   Defendant Neal is named herein in his individual and official capacity.   At all relevant times, Defendant Neal was acting under color of law. Defendant Neal has a business address of 1130 William Pitt Way, Pittsburgh, PA 15238.

8.     Defendant, Aaron Borello, was, at all relevant times, a Trooper or law enforcement official with the Pennsylvania State Police.   In his capacity as a Trooper or law enforcement official, Defendant Borello had a legal obligation to act in conformity with the United States Constitution and applicable federal and state laws.   Defendant Borello is named herein in his individual and official capacity. At all relevant times, Defendant Borello was acting under color of law.   Defendant Borello has a business address of 83 Murtland Avenue, Washington, PA 15301.

9.     Defendant, Frank Pawlowski, was, at all relevant times, the Commissioner of the Pennsylvania State Police.   In his capacity as Commissioner, Defendant Pawlowski has a legal obligation to act in conformity with the United States Constitution and applicable federal and state laws.   Defendant Pawlowski is named herein in his individual and official capacity. At all relevant times, Defendant Pawlowski was acting under color of law.   Defendant Pawlowski has a business address of 1800 Elmerton Avenue, Harrisburg, PA 17110.

10.    Defendant, Washington County, is a political subdivision of the Commonwealth of Pennsylvania, existing and operating pursuant to the laws of the Commonwealth of Pennsylvania.   Washington County has a legal responsibility to operate according to the laws of the United States and the Commonwealth of Pennsylvania, including but not limited to, the United States Constitution.   Washington County has a business address of Washington County Court House, Suite 1005, One South Main Street, Washington PA 15301.

11.    Defendant, Borough of Burgettstown, is a political subdivision of the Commonwealth of Pennsylvania existing and operating pursuant to the laws of the Commonwealth of Pennsylvania.   The Borough of Burgettstown has a legal responsibility to operate according to the laws of the United States and the Commonwealth of Pennsylvania, including but not limited to, the United States Constitution.   The Borough of Burgettstown has a business address of 1509 Main Street, Burgettstown, PA 15021.

12.    Defendant, Steven Toprani, was, at all relevant times, the District Attorney for the County of Washington, Pennsylvania.   In his capacity as District Attorney, Defendant Toprani has a legal obligation to act in conformity with the United States Constitution and applicable federal and state laws.   Defendant Toprani is named herein in his individual and official capacity. At all relevant times, Defendant Toprani was acting under color of law.   Defendant Toprani has a business address of Washington County Courthouse, Suite 1003, One South Main Street, Washington, PA 15301.

## FACTUAL ALLEGATIONS

13.    Plaintiff was employed as a police officer for Defendant Borough of Burgettstown, from some point in 2002 until February 4, 2009.

14.    During the time that Plaintiff was employed as a police officer, including a considerable time prior to  November 26, 2008, Plaintiff was the only female officer with Defendant Borough of Burgettstown, and, as such, she was not afforded the same

accommodations as the male officers, including a locker and a suitable place to get dressed/undressed.

15.     On March 21, 2008, in her capacity as a police officer with The Borough of Burgettstown, Plaintiff assisted Officer Michael North of Smith Township, Pennsylvania in a vehicle stop and arrest of Harold Dean Huber for violations of the Pennsylvania Controlled Substance, Drug, Device and Cosmetic Act. Specifically, Huber's vehicle was stopped and he was found in the possession of a quantity of controlled substances consistent with his intent to deliver such

16.     On March 21, 2008, Defendant prepared a Police Report, a Criminal Complaint and Affidavit of Probable Cause for the Criminal Complaint charging Huber with various crimes. Officer North, believing controlled substances might be found in the home of Harold Dean Huber, prepared an Affidavit of Probable Cause for a Search Warrant of Huber's home and gave it to Plaintiff to sign and present to a Washington County Magistrate/District Justice.

17.     Said Affidavit of Probable Cause for the Search Warrant mentioned that Plaintiff had seen Huber leaving his residence, since such was prepared by Officer North who had seen or professed to have seen Huber leave his residence a short time before he was stopped in his vehicle where controlled substances were found.

18.     Plaintiff overlooked Officer North's statement in the Affidavit that "this officer saw Huber leaving his residence" and signed and presented said Affidavit of

Probable Cause with the Affidavit of Probable Cause for the Criminal Complaint for Huber to a Washington County District Justice at the same time on March 21, 2008.

19.     Neither Plaintiff's Affidavit of Probable Cause for the Criminal Complaint or her report mentioned that she saw Huber leave his residence and in fact made it clear that Plaintiff did not see Huber leave his residence on March 21, 2008.

20.     Plaintiff signed the Affidavit of Probable Cause in a hurry and neglected to carefully read such. Plaintiff's need to prepare and present these documents in a hurry was justifiable.

21.     On or about November 26, 2008, Plaintiff was present at the Burgettstown Police Station, located at the Burgettstown Municipal Building, in a room where she commonly changed her clothes since she was not afforded a locker and suitable place to change clothes, like the male officers employed by Defendant Borough of Burgettstown.

22.     At said time and place, Plaintiff discovered the following:

      a.     A video camera that had been hidden in a ceiling vent;

      b.     Cords/wires attached to the video camera that had been hidden by ceiling tiles;

      c.     Cords/wires being connected to an electrical outlet, with another cord/wire running to a power strip; and

      d.     Cords/wires running to the storage/evidence room.

23.     Said video camera faced the room where Plaintiff dressed/undressed due to the fact that she was not afforded the same accommodations as male officers employed by Defendant Borough of Burgettstown and Defendant Roberts.

7

24.     Defendant Roberts and Defendant Aaron knew that Plaintiff dressed/undressed in the room that said video camera faced.

25.     It is believed and therefore averred that other Burgettstown police officers and/or other Burgettstown municipal employees, knew and/or should have known that Plaintiff dressed/undressed in the room that said video camera faced.

26.     The video camera was placed in said room to capture video of an officer with Defendant Borough of Burgettstown having sex with a female acquaintance.

27.     The video camera was placed in said room where Plaintiff commonly dressed/undressed by Defendant Aaron and Defendant Roberts. It is believed and therefore averred that Defendants Roberts and Defendant Aaron were acting at the direction of, or with the approval of, Defendant Toprani.

28.     Defendant Aaron, Defendant Roberts and Defendant Toprani hoped to capture said Burgettstown Police Officer having sex with the female acquaintance to use as leverage over said officer for reasons not entirely known. It is believed and therefore averred that the tape was to be used for what might be considered "blackmail."

29.     Subsequently, Plaintiff reported the placement of the hidden video camera to the Pennsylvania Attorney General's Office.

30.     On or about December 18, 2008, the Pennsylvania Attorney General's Office notified Plaintiff that she must first report the placement of the hidden video camera to the Washington County District Attorney's Office to conduct an inquiry and

to determine if any conflict exists that would prevent it from conducting an investigation.

31.     On or about December 20, 2008, Plaintiff and her father, Robert Price, met with Defendant Aaron at his residence to discuss the placement of the hidden video camera.

32.     At said time and place, Defendant Aaron informed Plaintiff that on or about October 15, 2008, he transported the video camera and the cords/wires and other related equipment from the Washington County District Attorney's Office to the Burgettstown Police Station.

33.     Defendant Aaron informed Plaintiff that he and Defendant Roberts installed the hidden video camera.

34.     Defendant Aaron informed Plaintiff that the hidden video camera was connected to a video cassette recorder that recorded images on video tape.   Defendant Aaron informed Plaintiff that the video cassette recorder was located in a locked storage/evidence room in the Burgettstown Police Station.

35.     Sometime in October 2008, Defendant Roberts changed the locks to said storage/ evidence room and did not give keys to Plaintiff.

36.     Defendant Aaron informed Plaintiff that the hidden video camera recorded video images of the room where Plaintiff dressed/undressed, possibly recording video images of Plaintiff dressing/undressing.

37.     Defendant Aaron informed Plaintiff that the placement of the hidden video camera would be referred to the Attorney General's Office for investigation.

38.     On or about January 8, 2009, Plaintiff was present at the Burgettstown Police Station.

39.     At said time and place, Plaintiff was instructed by Defendant Roberts not to leave the station as "men in suits" desired to talk to her.

40.     Shortly thereafter, Defendant Neal and Trooper Timothy Motte arrived at the station and directed Plaintiff to "meet in private."

41.     Subsequently, Defendant Neal, Trooper Timothy Motte (acting under color of law) and Defendant Toprani conducted an interrogation of Plaintiff.

42.     Said interrogation included questioning regarding the following:

     a.     Michael North;

     b.     Harold Dean Huber; and

     c.     The arrest of Harold Dean Huber.

43.     Based on the substance of said interrogation, Plaintiff believes and therefore avers that Defendant Neal was in the process of filing criminal charges against Plaintiff. It is believed and therefore averred that Defendant Neal was acting in conjunction with or at the direction of Defendant Aaron and Defendant Toprani in investigating Plaintiff and eventually filing criminal charges against her.

10

44.     Plaintiff did not believe that she was free to discontinue the interrogation on January 8, 2009 and leave the premises without subjecting herself to arrest and/or the use of physical restraint.

45.     Plaintiff's belief was reasonable.

46.     Plaintiff was interrogated while in custody on January 8, 2009 by Defendant Neal, Trooper Motte (acting under color of law) and Defendant Toprani without probable cause and/or any lawful basis for Defendant Neal, Trooper Motte or Defendant Toprani to detain Plaintiff.

47.     It is believed and therefore averred that Defendant Roberts was aware and/or assisting in the interrogation of Plaintiff.

48.     It is believed and therefore averred that Defendant Roberts was an acquaintance of Harold Dean Huber.

49.     On or about January 14, 2009, Plaintiff learned of the arrest by the Pennsylvania State Police of Derek Dayoub, an acquaintance of Plaintiff, and a Smith Township Police Officer.

50.     Out of concern for Officer Dayoub, Plaintiff and her parents arrived at the Pennsylvania State Police Barracks in Washington, PA, where Officer Dayoub was being detained on January 14, 2009.

51.     At said time and place, Plaintiff was confronted by Defendant Borello and Defendant Toprani and was directed to an upstairs room to "meet in private."

52.    Subsequently, Defendant Borello and Defendant Toprani conducted an interrogation of Plaintiff.

53.    Said interrogation included questioning regarding Derek Dayoub, Plaintiff's relationship with Dayoub and his ethnicity

54.    Plaintiff did not believe that she was free to discontinue the interrogation and leave the premises without subjecting herself to arrest and/or the use of physical restraint. Specifically Plaintiff repeatedly asked if she could leave and said Defendants informed her she could not.

55.    Plaintiff's belief was reasonable.

56.    Plaintiff was interrogated while in custody on January 14, 2009 by Defendant Borello and Defendant Toprani without probable cause and/or any lawful basis for said Defendants to detain Plaintiff

57.    On or about February 5, 2009, Defendant Neal filed a Police Criminal Complaint before District Justice Gary Havelka charging Plaintiff with the following crimes:

    a.    Criminal Conspiracy to Commit the Crimes of Official Oppression and False Swearing in Official Matters, (18 Pa.C.S.A. Sec. 903(a)(1));

    b.    Official Oppression; (18 Pa.C.S.A. Sec. 5301); and

    c.    False Swearing in Official Matters, (18 Pa.C.S.A. Sec. 4903(a)(1)&(2)).

58.    The basis in the mind of Defendant Neal and, it is believed and therefore averred, Defendant Toprani, for said charges against Plaintiff was that Plaintiff

prepared an Affidavit of Probable Cause to secure a Search Warrant on March 21, 2008 to search the home of Harold Dean Huber in which Plaintiff erroneously stated she saw Harold Huber leaving his house when in fact Plaintiff never saw Huber leaving his house as set forth in the Affidavit of Probable Cause.

59.    Defendant Neal knew, and/or he reasonably should have known, as of February 5, 2009, that Plaintiff's misstatement in the March 21, 2008 Affidavit of Probable Cause was a mistake, and did not warrant the filing of the above-stated charges set forth in paragraph fifty-seven (57).

60.    The Affidavit of Probable Cause to said Criminal Complaint, that was verified and signed by Defendant Neal contained the following allegations regarding a police report, an Affidavit of Probable Cause for a Criminal Complaint, and an Affidavit of Probable Cause for a Search Warrant, all three (3) of which Plaintiff signed in connection with the arrest of Harold Dean Huber:

> In the affidavit North typed that Price had seen Huber leaving his residence . . . On January 8, 2009, I reviewed a copy of the search warrant and affidavit . . . Huber had been arrested earlier on a traffic stop and the affidavit of probable cause was based on details of that stop including a stated fact that Price had seen Huber leaving his residence immediately prior to the traffic stop.   Additionally Price submitted a police report reviewed by me stating that she had seen him leaving the residence immediately prior to the traffic stop.

(Please see Exhibit A).

61.    The actual police report signed by Plaintiff in connection with the Huber arrest indicates the following:

Narrative: On Friday 21 March 2008 at 2122 hours, I was getting into my police car in the parking lot of the police department when Officer North with Smith Township Police contacted me.   Officer North advised me that he was coming out of Francis Mine on Maple Road following a Dodge Ram with a burnt out license plate lamp.   I advised Officer North to initiate a traffic stop until I arrive.   Officer North initiated the traffic stop on Main Street in Burgettstown . . . As Officer North was speaking with Huber, I walked up to the driver side of the vehicle and could smell a strong odor of burnt marijuana emanating from inside of the vehicle . . . As Huber's left side pants pocket was being searched, a foreign object was felt.   After going into Huber's pants pocket, Officer North located a baggy containing two individually packaged baggies of cocaine.   After completing a search of Huber's person, Officer North located four one hundred dollar bills in his back pants pocket and sixty-four dollars in his wallet.   I then searched the immediate area inside of the vehicle and located two burnt marijuana joints in the ashtray along with two packages of rolling papers . . . Judge Wilson consented to a search warrant of 52 Dinsmore due to the fact the actor left the residence with the drugs. . . . The warrant was drafted due to Harold Dean Huber being arrested earlier that evening with narcotics.

(Please see Exhibit B).

62.     Contrary to the allegations of Defendant Neal, the above-stated police report of Plaintiff does not "state that she had seen him leaving the residence immediately prior to the traffic stop."

63.     The actual police report signed by Plaintiff does state the following with respect to the stop of Huber:

> a.     On Friday 21 March 2008 at 2122 hours, I was getting into my police car in the parking lot of the police department when Officer North with Smith Township Police contacted me;
>
> b.     Officer North advised me that he [Huber] was coming out of Francis Mine on Maple Road following a Dodge Ram with a burnt out license plate lamp; and
>
> c.     I advised Officer North to initiate a traffic stop until I arrive.

14

(Please see Exhibit B).

64.     The actual Affidavit of Probable Cause for the Criminal Complaint verified by Plaintiff in connection with the Huber arrest is identical to the above-stated police report.   (Please see Exhibit C).

65.     Contrary to the allegations of Defendant Neal, the above-stated Affidavit of Probable Cause for the Criminal Complaint does not indicate that "Price had seen Huber leaving his residence" and was not "based on details of that stop including a stated fact that Price had seen Huber leaving his residence immediately prior to the traffic stop."   (Please see Exhibit C).

66.     The actual Affidavit of Probable Cause for the Criminal Complaint states the following with respect to the stop of Huber:

    a.     On Friday 21 March 2008 at 2122 hours I was getting into my police car in the parking lot of the police department when Office North with Smith Township Police contacted me;

    b.     Officer North advised me that he [Huber] was coming out of Francis Mine on Maple Road following a Dodge Ram with a burnt out license plate lamp; and

    c.     I advised Officer North to initiate a traffic stop until I arrive.

(Please see Exhibit C).

67.     Defendant Neal therefore, in charging Defendant for a mistake in signing an Affidavit of Probable Cause in the Huber case with crimes that required intentional behavior, or more than negligent behavior, by Plaintiff, prepared an Affidavit of

15

Probable Cause for a Criminal Complaint charging Plaintiff with various crimes that contained a material and intentional misstatement of fact.

68.      As a result of the above-stated February 5, 2009 Criminal Complaint filed by Defendant Neal, Plaintiff was subjected to criminal prosecution, which was reported through various sources of news to the general public.

69.      As a result of the February 5, 2009 Criminal Complaint filed by Defendant Neal, the public can view the fact that Plaintiff was charged with these crimes online.

70.      On or about February 4, 2009, Plaintiff received notice from Defendant Borough of Burgettstown that she was suspended pending disposition of the above-stated criminal charges. Plaintiff has never returned to her position as a Burgettstown Police Officer.

71.      Plaintiff's loss of a career as a police officer is the result of the February 5, 2009 criminal charges brought against her and subsequently re-filed, by Defendant Neal and Defendant Toprani.

72.      On or about March 18, 2009, Plaintiff's Preliminary Hearing was conducted before Magistrate District Justice James Ellis.

73.      Assistant District Attorney Joshua Carroll of the Washington County District Attorney's Office appeared for the prosecution.

74.      ADA Carroll's only witness was Defendant Neal.

75.      At the March 18, 2009 preliminary hearing, under cross-examination by Plaintiff's Criminal Defense Counsel, Dennis Paluso, Defendant Neal repeatedly made

the false assertion that Plaintiff stated in her report regarding the Huber arrest, that she

saw Huber leaving his house on the date Huber was arrested.

76.     During the course of the above-stated March 18, 2009 Preliminary Hearing,

Defendant Neal made the following misrepresentations, including but not limited to:

   a.   That the "Police report stated that she (Plaintiff) had seen him
        (Huber) come from the residence;"

   b.   That Plaintiff "Submitted a police report reviewed by me stating
        that she had seen him leave the residence immediately prior to the
        traffic stop;" and

   c.   That the affidavit of probable cause indicates "Due to the fact that
        Plaintiff had seen Huber leave his residence immediately before the
        traffic stop."

77.     During the course of the above-stated March 18, 2009 Preliminary Hearing,

Defendant Neal provided testimony, including but not limited to:

   a.   That Plaintiff did not testify at the Preliminary Hearing for Huber;

   b.   That Officer North testified to the following at the Preliminary
        Hearing for Huber, "That it is he who follows that vehicle from the
        driveway at 52 Dinsmore Avenue, radios (Plaintiff), she is at the
        police station and he is pulled over where she is at, basically the
        parking lot of the police station;" and

   c.   That the Suppression Motion filed by Huber reiterates the fact that it
        is Officer North, not Plaintiff, that sees the vehicle.

78.     Defendant Neal, therefore, in a case in which he charged Plaintiff with

various crimes for a mistake in signing an Affidavit of Probable Cause for a search

warrant, repeatedly lied under oath at the Preliminary Hearing regarding the

aforementioned criminal charges brought against Plaintiff by Defendant Neal.

17

79.     At the close of the March 18, 2009 Preliminary Hearing, District Justice James Ellis dismissed all charges against Plaintiff.

80.     It was outrageous conduct that shocks the conscience by Defendant Neal to subject Plaintiff for criminal prosecution for a mistake in an Affidavit of Probable Cause and prepare an Affidavit of Probable Cause for a Criminal Complaint against Defendant wherein Defendant Neal intentionally placed material misstatements of fact.

81.     It was outrageous conduct that shocks the conscience by Defendant Neal to repeatedly lie under oath at a Preliminary Hearing that Plaintiff placed a statement in her police report regarding the Huber arrest that Plaintiff saw Huber leave his residence.

82.     Defendant Neal acted maliciously in filing and prosecuting the criminal charges against Plaintiff in that Plaintiff was charged, with clear knowledge by Defendant Neal, that Plaintiff had committed no crime and to harass her for discovering the video recorder in the room where she dressed/undressed and complaining about such.

83.     On or about March 23, 2009, Defendant Neal re-filed a Police Criminal Complaint before District Justice James Ellis re-charging Plaintiff with the same crimes as before, plus another count of False Swearing in Official Matters, (18 Pa.C.S.A. Sec. 4903(a)(1) and/or (2)).

84.     It is believed and therefore averred that Defendant Neal refilled said charges at the direction of or with the approval of Defendant Toprani.

85.     As of March 23, 2009, Defendant Neal knew that Plaintiff had not committed the crimes he had charged her with on March 23, 2009.

86.     As of March 23, 2009, Defendant Toprani knew Plaintiff had not committed the crimes Plaintiff was charged with on March 23, 2009.

87.      On or about March 23, 2009, Defendant Toprani filed a Motion for Temporary Assignment of Issuing Authority before Judge Debbie O'Dell Seneca, of the Court of Common Pleas of Washington County, alleging the following:

> a.      That the prosecution met its burden of presenting a prima facie case and that Magistrate District Justice James Ellis committed errors of law; and
>
> b.      That the prosecution makes said Motion to ensure a fair and impartial proceeding.

(Please see Exhibit D).

88.     Defendant Toprani failed to allege anything specific in his Motion as to how errors of law were made.

89.     The refiling of the criminal charges plus one additional charge against Plaintiff was done maliciously by Defendant Neal and Defendant Toprani in that the filing of criminal charges was done with clear knowledge Plaintiff had committed no crime with the intent to harass her for complaining about the video camera placed in the room where she dressed/undressed .

90.     On or about March 23, 2009, without conducting a hearing, Judge Seneca of the Washington County Court of Common Pleas granted said Motion and reassigned

said matter to Senior Magistrate District Justice Marjorie Teagarden.   (Please see Exhibit E).

91.     Subsequent to March 23, 2009, Plaintiff's Criminal Defense Counsel, Dennis Paluso, drafted a Motion to Vacate Order Assigning Different Issuing Attorney and served such on Defendant Toprani.

92.     In said Motion to Vacate Order Assigning Different Issuing Authority, (included was a Motion to Quash Criminal Complaint) Plaintiff's Criminal Defense Counsel, Dennis Paluso, averred the criminal charges filed against Plaintiff were meant to harass her in that it was clear by March 23, 2009 that Plaintiff had committed no crime and that she was charged in retaliation for complaining about the video recorder in a room where she dressed/undressed.

93.     Plaintiff had been required to dress in said room for nearly six (6) years as Defendant Roberts and Defendant Borough of Burgettstown had refused to provide her with a locker like they provided to the male police officers.

94.     On or about September 3, 2009, the above-stated charges were withdrawn before Senior Magistrate District Justice Marjorie Teagarden. It is believed and therefore averred that the charges were withdrawn to avoid disclosure of the allegations in the aforementioned Motion to Vacate prepared by Attorney Paluso.

95.     It is believed and therefore averred that the criminal charges against Plaintiff were withdrawn by Defendant Toprani out of fear that that the Motion to Vacate would be filed and thus placed in the public record.

96.     It is believed and therefore averred that neither Defendant Aaron nor Defendant Toprani referred the investigation of the hidden video camera to the Attorney General's Office.

97.     Defendant Aaron and/or Defendant Toprani directed Plaintiff to submit information to McDonald Borough Police Chief Mark Dorsey to conduct some sort of "review" of the hidden camera incident.

98.     On or about February 20, 2009, Plaintiff submitted information to Chief Dorsey.

99.     Plaintiff is not aware of the status of said "review" as she has not received any information regarding the same.

100.    Plaintiff began her employment as a Burgettstown police officer in 2002.

101.    Despite repeated requests and the fact that the male Burgettstown police officers were provided lockers to dress/undress, Plaintiff was never provided a locker to dress/undress by Defendant Roberts and/or Defendant Borough of Burgettstown.

102.    As a result; Plaintiff was required to dress/undress in the above-stated room that the hidden video camera faced.

103.    As a result of being denied equal treatment; i.e. the use of a locker, by Defendant Roberts and/or Defendant Borough of Burgettstown, Plaintiff suffered the below-stated injuries/damages and may have been video recorded in the acts of dressing/undressing.

104.    As a result of being denied what Defendant Borough of Burgettstown and Defendant Roberts provided male officers, Plaintiff has suffered mental anguish as realizing that she was found to dress/undress in a room where video camera was present.

105.    As a result of Defendants' above-stated actions; Plaintiff has sustained the following injuries/damages including, but not limited to:

a.    Violation of her substantive due process rights under the Fourteenth Amendment to the United States Constitution to be free from actions that "shock the conscience" and/or "offend the community's serve of fair play and decency," i.e. the placing of the hidden camera, possibly recording video images of Plaintiff dressing/undressing;

b.    Violation of her substantive due process rights under the Fourteenth Amendment to the United States Constitution to be free from action that "shocks the conscience" and/or offends the community's sense of fair play and decency, (i.e. being subjected twice to meritless prosecution in the clear absence of probable cause in retaliation for complaining that she was forced to dress/undress in a room where a video camera was placed after being denied equal protection for a prolonged period of time) (i.e. the right to a locker like male officers were offered by Defendant Roberts and/or Defendant Borough of Burgettstown).

c.    Violations of her rights under the Fourth Amendment, Fifth Amendment and Fourteenth Amendment  to the United States Constitution to be free from malicious prosecution, false arrest, false imprisonment and unlawful interrogation;

d.    Violations of her rights under the Sixth Amendment and the Fourteenth Amendment to the United States Constitution to have a fair trial;

e.    Violation of her Fourteenth Amendment right to equal protection;

      f.      Violations of her rights under 42 U.S.C. Section 1983;

      g.      Violations of her rights under 42.U.S.C. Section 2000 (e);

      h.      Loss of her physical liberty;

      i.      Loss of wages and other monies; including, but not limited to, monies expanded for attorneys;

      j.      Emotional trauma, humiliation, and distress; and/or

      k.      Denial of her right to equal protection under the law (i.e. a locker like male police officers were provided) which resulted in being forced to dress/undress where a camera was placed.

## CAUSES OF ACTION

**COUNT ONE:   SUBSTANTIVE DUE PROCESS/"SHOCKS THE CONSCIENCE": 42 U.S.C. SECTION 1983, ET SEQ.:   AMBER PRICE V. GEORGE ROBERTS, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS CHIEF OF THE BURGETTSTOWN POLICE DEPARTMENT.**

106.    Plaintiff incorporates Paragraphs one (1) through one hundred and five (105) as if set forth herein.

107.    Under the Fourteenth Amendment to the United States Constitution; Plaintiff has a substantive due process right to be free from actions by the government and/or the police that "shock the conscience" and/or "offends the community's sense of fair play and decency."

108.    Plaintiff may recover damages for said substantive due process violations under the Fourteenth Amendment upon a showing of reckless and/or callous indifference to Plaintiff's rights.

109.     Defendant Roberts exhibited reckless and/or callous indifference to Plaintiff's substantive due process rights under the Fourteenth Amendment to the United States Constitution and violated such by the following actions including, but not limited to:

a.     Installing the hidden video camera facing the room where Plaintiff undressed/ dressed after failing to provide Plaintiff with the accommodations provided to male police officers;

b.     Recording video images of the room where Plaintiff dressed/undressed, possibly recording video images of Plaintiff dressing/undressing;

c.     Allowing the installation of the hidden video camera facing the room where Plaintiff dressed/undressed; and/or

d.     Allowing the recording of video images of the room where Plaintiff undressed/ dressed, possibly recording video images of Plaintiff dressing/undressing.

110.     Defendant Roberts acted jointly with Defendant Aaron and Defendant Toprani in placing the video camera in a room where Plaintiff dressed/undressed.

111.     Defendant Roberts had a duty to uphold the law and stop Defendant Aaron and Defendant Toprani from placing the video camera in a room where Plaintiff dressed and undressed.

112.     Defendant Roberts conspired with Defendant Aaron and Defendant Toprani to place the video camera in a room where Plaintiff dressed/undressed in violation of 42 U.S.C. Sec. 1983 and 42 U.S.C. Sec. 1985.

113.   The above-stated actions of Defendant Roberts constitute violations of 42 U.S.C. Section 1983, et seq, as they are actions that "shock the conscience" and/or "offend the community's sense of fair play and decency."

114.   The above-stated actions of Defendant Roberts constitute violations of clearly established constitutional and statutory rights, which a reasonable person would be aware, and constitute outrageous conduct since it consisted of actions done with a bad motive and/or with a reckless indifference to the interests of Plaintiff in that Defendant Roberts intentionally committed said actions of an unreasonable character in disregard of risks known to Defendant Roberts, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow to Plaintiff as a result of his conduct.

115.   As a result of the above-stated actions of Defendant Roberts, Plaintiff has suffered the above-stated injuries/damages as set forth in paragraph one hundred and five (105).

WHEREFORE Plaintiff respectfully requests the following:

(a)   An award of compensatory damages against Defendant Roberts, jointly and severally, in an amount in excess of $75,000.00;

(b)   An award of costs, expenses, and counsel fees pursuant to 42 U.S.C. Section 1988;

(c)   An award of punitive damages; and

(d)   Other relief as is just and proper.

25

**COUNT   TWO:   SUBSTANTIVE DUE PROCESS/"SHOCKS THE CONSCIENCE":
42 U.S.C. SECTION 1983, ET SEQ.: AMBER PRICE V. J. MICHAEL AARON,
INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS CHIEF DETECTIVE OF
WASHINGTON COUNTY.**

116.    Plaintiff incorporates Paragraphs one (1) through one hundred and fifteen (115) as if set forth herein.

117.    Under the Fourteenth Amendment to the United States Constitution; Plaintiff has a substantive due process right to be free from actions by the government and/or the police that "shock the conscience" and/or "offend the community's sense of fair play and decency."

118.    Plaintiff may recover damages for said substantive due process violations under the Fourteenth Amendment upon a showing of reckless and/or callous indifference to Plaintiff's rights.

119.    Defendant Aaron exhibited reckless and/or callous indifference to Plaintiff's substantive due process rights under the Fourteenth Amendment to the United States Constitution and violated such by the following actions including, but not limited to:

a.    Installing the hidden video camera facing the room where Plaintiff undressed/ dressed;

b.    Recording video images of the room where Plaintiff dressed/undressed, possibly recording video images of Plaintiff dressing/undressing; and

c.    Encouraging the filing and re-filing of criminal charges against Plaintiff where there was no probable cause for said criminal

26

charges because Plaintiff found out about the video camera and complained about such

120.   The above-stated actions of Defendant Aaron constitute violations of 42 U.S.C. Section 1983, et seq, as they are actions that "shock the conscience" and/or "offend the community's sense of fair play and decency."

121.   Defendant Aaron acted jointly with Defendant Roberts and Defendant Toprani in placing the video camera in a room where Plaintiff dressed/undressed.

122.   Defendant Aaron conspired with Defendant Roberts and Defendant Toprani to place the video camera in a room where Plaintiff dressed/undressed in violation of 42 U.S.C. Sec. 1983 and 42 U.S.C. 1985.

123.   Defendant Aaron conspired with Defendant Toprani in seeing that Plaintiff was charged with crimes for which there was not probable cause and were filed maliciously in violation of 42 U.S.C. Sec. 1983 and 42 U.S.C. 1985.

124.   Defendant Aaron had a duty to uphold the law and stop Defendant Roberts from placing a video camera in a room where Plaintiff dressed/undressed.

125.   The above-stated actions of Defendant Aaron constitute violations of clearly established constitutional and statutory rights, which a reasonable person would be aware, and constitute outrageous conduct since it consisted of actions done with a bad motive and/or with a reckless indifference to the interests of Plaintiff in that Defendant Aaron intentionally committed said actions of an unreasonable character in disregard of risks known to Defendant Aaron, or so obvious that he must be taken to

have been aware of it, and so great as to make it highly probable that harm would follow to Plaintiff as a result of his conduct.

126.    As a result of the above-stated actions of Defendant Aaron, Plaintiff has suffered the above-stated injuries/damages as set forth in paragraph one hundred and five (105).

WHEREFORE Plaintiff respectfully requests the following:

(a)    An award of compensatory damages against Defendant Aaron, jointly and severally, in an amount in excess of $75,000.00;

(b)    An award of costs, expenses, and counsel fees pursuant to 42 U.S.C. Section 1988;

(c)    An award of punitive damages; and

(d)    Other relief as is just and proper.

**COUNT   THREE:   SUBSTANTIVE DUE PROCESS/"SHOCKS THE CONSCIENCE":   42 U.S.C. SECTION 1983, ET SEQ.:   AMBER PRICE V. STEVEN M. TOPRANI, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS WASHINGTON COUNTY DISTRICT ATTORNEY**

127.    Plaintiff incorporates Paragraphs one (1) through one hundred and twenty six (126) as if set forth herein.

128.    Under the Fourteenth Amendment to the United States Constitution; Plaintiff has a substantive due process right to be free from actions by the government and/or the police that "shock the conscience" and/or "offend the community's sense of fair play and decency."

129.    Plaintiff may recover damages for said substantive due process violations under the Fourteenth Amendment upon a showing of reckless and/or callous indifference to Plaintiff's rights.

130.    Defendant Toprani exhibited reckless and/or callous indifference to Plaintiff's substantive due process rights under the Fourteenth Amendment to the United States Constitution and violated such by the following actions including, but not limited to:

    a.    Participating in or approving the installation of the hidden video camera facing the room where Plaintiff  dressed/ undressed;

    b.    Participating in or approving video images of the room where Plaintiff dressed/undressed, possibly recording video images of Plaintiff dressing/undressing; and

    c.    Encouraging the filing and re-filing of criminal charges against Plaintiff where there was no probable cause for said criminal charges because Plaintiff found out about the video camera and complained about such.

131.    Defendant Toprani acted jointly with Defendant Roberts and Defendant Aaron in placing the video camera in a room where Plaintiff dressed/undressed.

132.    Defendant Toprani conspired with Defendant Roberts and Defendant Toprani to place the video camera in a room where Plaintiff dressed/undressed in violation of 42 U.S.C. 1983 and 42 U.S.C. 1985.

133.    Defendant Toprani conspired with Defendant Aaron and Defendant Neal in seeing that Plaintiff was charged with crimes for which there existed no probable cause and were filed maliciously in violation of 42 U.S.C. 1983 and 42 U.S.C. 1985.

134.    Defendant Toprani had a duty to stop Defendant Neal from filing criminal charges against Plaintiff for which there was not probable cause and were filed maliciously and to stop Defendant Aaron and Defendant Roberts from placing a video camera in a room where Plaintiff dressed/undressed.

135.    The above-stated actions of Defendant Toprani constitute violations of 42 U.S.C. Section 1983, et seq, as they are actions that "shock the conscience" and/or "offend the community's sense of fair play and decency."

136.    The above-stated actions of Defendant Toprani constitute violations of clearly established constitutional and statutory rights, which a reasonable person would be aware, and constitute outrageous conduct since it consisted of actions done with a bad motive and/or with a reckless indifference to the interests of Plaintiff in that Defendant Toprani intentionally committed said actions of an unreasonable character in disregard of risks known to Defendant Toprani or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow to Plaintiff as a result of his conduct.

137.    As a result of the above-stated actions of Defendant Toprani, Plaintiff has suffered the above-stated injuries/damages as set forth in paragraph one hundred and five (105).

WHEREFORE Plaintiff respectfully requests the following:

(a)    An award of compensatory damages against Defendant Toprani, joint and severally, in an amount in excess of $75,000.00;

     (b)     An award of costs, expenses, and counsel fees pursuant to 42 U.S.C. Section 1988;

     (c)     An award of punitive damages; and

     (d)     Other relief as is just and proper.

**COUNT FOUR: MALICIOUS PROSECUTION - FEBRUARY 5, 2009 CRIMINAL COMPLAINT: AMBER PRICE V. CHRISTOPHER J. NEAL, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS TROOPER/CORPORAL OR LAW ENFORCEMENT OFFICIAL WITH THE PENNSYLVANIA STATE POLICE**

138.    Plaintiff hereby incorporates one (1) through one hundred and thirty-seven (137) of this Complaint as if set forth herein.

139.    Defendant Neal's act of charging Plaintiff on February 5, 2009, his misrepresentations in his Affidavit of Probable Cause and his providing false testimony at Plaintiff's Preliminary Hearing, constitute a malicious prosecution by Defendant Neal against Plaintiff for the following reasons:

     a.     Defendant Neal knowingly, willfully and wantonly initiated malicious prosecution against Plaintiff by initiating proceedings with malice that were criminal in character against Plaintiff, which were terminated in favor of Plaintiff, and Defendant did not have probable cause to initiate the proceedings against Plaintiff ;

     b.     Defendant Neal acted maliciously by intentionally placing material misrepresentations of fact in his Affidavit of Probable Cause and lying under oath at the Preliminary Hearing and filing said charges to harass Plaintiff; and

     c.     As a result, Plaintiff suffered harm.

140.    Plaintiff avers that the conduct of Defendant Neal, as mentioned above, was not supported by probable cause, meaning Plaintiff's arrest was not supported by a

reasonable ground of suspicion or supported by circumstances sufficient to warrant an ordinarily prudent man in believing the party is guilty of the offense.

141.    The conduct of Defendant Neal, as mentioned above, was outrageous conduct since such consisted of acts done with a bad motive and/or with a reckless indifference to the interests of Plaintiff in that Defendant Neal intentionally committed acts of an unreasonable character in disregard of a risk known to Defendant Neal, or so obviously that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow to Plaintiff as a result of his conduct.

WHEREFORE, Plaintiff claims compensatory and punitive damages against Defendant Neal, jointly and severally, in an amount in excess of $75,000.00, plus interest and costs.

**COUNT FIVE: MALICIOUS PROSECUTION: REFILING OF CRIMINAL CHARGES: AMBER PRICE V. CHRISTOPHER J. NEAL, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS TROOPER OR LAW ENFORCEMENT OFFICIAL WITH THE PENNSYLVANIA SATE POLICE**

142.    Plaintiff hereby incorporates one (1) through one hundred and forty-one (141) of this Complaint as if the same were set forth at length herein.

143.    The refiling of the criminal charges against Plaintiff on March 23, 2009 by Defendant Neal that had been dismissed, with the addition of one more charge, constitutes a malicious prosecution by Defendant Neal against Plaintiff for the following reasons:

      a.    Defendant Neal knowingly, willfully and wantonly initiated malicious prosecution against Plaintiff by initiating proceedings

with malice that were criminal in character against Plaintiff, which were terminated in favor of Plaintiff, and Defendant did not have probable cause to initiate the proceedings against Plaintiff for the crimes plus an additional charge;

b.    As a result, Plaintiff suffered harm including criminal prosecution for crimes she was innocent of, loss of her position as a police officer, damage to her reputation and attorney's fees;

c.    Defendant Neal acted maliciously in that the motivation for the criminal charges was due to Plaintiff's complaints about the video camera placed in the room where she dressed/undressed, Defendant Neal by March 23, 2009 knew Plaintiff did not act criminally or with the requisite mens rea to support the crimes Defendant Neal charged her with and Defendant Neal had repeatedly lied under oath at the Preliminary Hearing before said charges were initially dismissed; and

d.    As a result, Plaintiff sustained harm including criminal prosecution for a crime she was innocent of, loss of her position as a police officer, damage to her reputation and attorney's fees.

144.   Plaintiff avers that the conduct of Defendant Neal, as mentioned above, was not supported by probable cause, meaning Plaintiff's criminal charges were not supported by a reasonable ground of suspicion or supported by circumstances sufficient to warrant an ordinarily prudent man in believing the party is guilty of the offense.

145.   The conduct of Defendant Neal, as mentioned above, was outrageous conduct since such consisted of acts done with a bad motive and/or with a reckless indifference to the interests of Plaintiff in that Defendant Neal intentionally committed acts of an unreasonable character in disregard of a risk known to Defendant Neal, or so obviously that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow to Plaintiff as a result of his conduct.

WHEREFORE, Plaintiff claims compensatory and punitive damages against Defendant Neal, jointly and severally, in an amount in excess of $75,000.00, plus interest and costs.

### COUNT SIX: MALICIOUS PROSECUTION - FEBRUARY 5, 2009 CRIMINAL COMPLAINT: AMBER PRICE V. STEVEN TOPRANI, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS DISTRICT ATTORNEY FOR WASHINGTON COUNTY

146.    Plaintiff hereby incorporates one (1) through one hundred and forty-five (145) of this Complaint as if set forth herein.

147.    Defendant Toprani's act of directing or encouraging Defendant Neal to charge Plaintiff on February 5, 2009 constitutes a malicious prosecution by Defendant Toprani against Plaintiff for the following reasons:

    a.    Defendant Toprani knowingly, willfully and wantonly encouraged Defendant Neal to initiated a malicious prosecution against Plaintiff by initiating proceedings with malice that were criminal in character against Plaintiff, which were terminated in favor of Plaintiff, and Defendant Toprani knew there was not probable cause to initiate the proceedings against Plaintiff ;

    b.    As a result, Plaintiff suffered harm including criminal prosecution for a crime she was innocent of, loss of her position as a police officer, damage to her reputation and attorney's fees; and

    c.    Defendant Toprani acted maliciously in that the motivation for the criminal charges was due to Plaintiff's complaints about the video camera placed in the room where she dressed/undressed, Defendant Toprani knew Plaintiff did not act criminally or with the requisite mens rea to support the crimes Defendant Neal charged her with.

148.    Plaintiff avers that the conduct of Defendant Toprani and Defendant Neal,

as mentioned above, was not supported by probable cause, meaning Plaintiff's criminal charges were not supported by a reasonable ground of suspicion or supported by circumstances sufficient to warrant an ordinarily prudent man in believing the party is guilty of the offense.

149.    The conduct of Defendant Toprani, as mentioned above, was outrageous conduct since such consisted of acts done with a bad motive and/or with a reckless indifference to the interests of Plaintiff in that Defendant Toprani intentionally committed acts of an unreasonable character in disregard of a risk known to Defendant Toprani, or so obviously that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow to Plaintiff as a result of his conduct.

WHEREFORE, Plaintiff claims compensatory and punitive damages against Defendant Toprani, jointly and severally, in an amount in excess of $75,000.00, plus interest and costs.

## COUNT SEVEN: MALICIOUS PROSECUTION: REFILING OF CRIMINAL CHARGES: AMBER PRICE V. STEVEN TOPRANI, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS DISTRICT ATTORNEY FOR WASHINGTON COUNTY

150.    Plaintiff hereby incorporates one (1) through one hundred and forty-nine (149) of this Complaint as if the same were set forth at length herein.

151.    The refiling of the criminal charges against Plaintiff on March 23, 2009 by Defendant Neal that had been dismissed with the addition of one more charge was done at the direction of or with the approval of Defendant Toprani and constitute a malicious prosecution for the following reasons:

a.   Defendant Toprani knowingly, willfully and wantonly initiated malicious prosecution against Plaintiff by initiating proceedings with malice that were criminal in character against Plaintiff, which were terminated in favor of Plaintiff, and Defendant did not have probable cause to initiate the proceedings against Plaintiff for the crimes charged;

b.   As a result, Plaintiff suffered harm including criminal prosecution for crimes she was innocent of, loss of her position as a police officer, damage to her reputation and attorney's fees; and

c.   Defendant Toprani acted maliciously in that the motivation for the criminal charges was due to Plaintiff's complaints about the video camera placed in the room where she dressed/undressed, and Defendant Toprani, by March 23, 2009, knew Plaintiff did not act criminally or with the requisite mens rea to support the crimes Defendant Neal charged her with.

152.   Plaintiff avers that the conduct of Defendant Toprani, as mentioned above, was not supported by probable cause, meaning Plaintiff's prosecution was not supported by a reasonable ground of suspicion or supported by circumstances sufficient to warrant an ordinarily prudent man in believing the party is guilty of the offense.

153.   The conduct of Defendant Toprani, as mentioned above, was outrageous conduct since such consisted of acts done with a bad motive and/or with a reckless indifference to the interests of Plaintiff in that Defendant Toprani intentionally committed acts of an unreasonable character in disregard of a risk known to Defendant Toprani, or so obviously that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow to Plaintiff as a result of his conduct.

WHEREFORE, Plaintiff claims compensatory and punitive damages against Defendant Toprani, jointly and severally, in an amount in excess $75,000.00, plus interest and costs.

**COUNT EIGHT: MALICIOUS PROSECUTION: 42 U.S.C. SECTION 1983, ET SEQ.: AMBER PRICE V. CHRISTOPHER J. NEAL, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS TROOPER OR LAW ENFORCEMENT OFFICIAL WITH THE PENNSYLVANIA SATE POLICE**

154.   Plaintiff incorporates Paragraphs one (1) through one hundred and fifty-three (153) as if set forth herein.

155.   Plaintiff had an established right under the Fourth Amendment to the United States Constitution and the Fourteenth Amendment to the United States Constitution to be free from prosecution for criminal charges without probable cause which are pursued maliciously, a right Defendant Neal violated when, claiming to act under proper legal authority, he filed, and then re-filed after their dismissal, the above-stated criminal charges and actively participated in the commencement and/or maintenance of the above-stated criminal proceedings against Plaintiff.

156.   Defendant Neal pursued the above-stated prosecution of Plaintiff and/or the filing, and then re-filing, of the above-stated criminal charges against Plaintiff without any probable cause or reasonable basis for believing Plaintiff committed the above-stated offenses or any other crime in the Commonwealth of Pennsylvania, and before and after the above-stated criminal charges were dismissed by District Justice James Ellis.

157.    Defendant Neal acted jointly with Defendant Toprani in charging Plaintiff with the aforementioned crimes.

158.    Defendant Neal conspired with Defendant Toprani to charge Plaintiff with the aforementioned crimes knowing probable cause did not exist and because Plaintiff had complained about the video camera in a room where she dressed/undressed in violation of 42 U.S.C. 1983 and 42 U.S.C. 1985.

159.    Defendant Neal pursued the above-stated prosecution of Plaintiff and/or the filing, and then re-filing, of the above-stated criminal charges against Plaintiff with malice towards Plaintiff by making the above-stated misrepresentations against Plaintiff in the filing, and then re-filing, of his above-stated affidavit of probable cause against Plaintiff and/or the above-stated misrepresentations he made at Plaintiff's March 18, 2009 Preliminary Hearing and/or re-filing of the above-stated criminal charges after they were dismissed by District Justice James Ellis.

160.    The above-stated actions of Defendant Neal constitute violations of 42 U.S.C. Section 1983, et seq.

161.    The above-stated actions of Defendant Neal constitute violations of clearly established constitutional and statutory rights, which a reasonable person would be aware, and constitute outrageous conduct since it consisted of actions done with a bad motive and/or with a reckless indifference to the interests of Plaintiff in that Defendant Neal intentionally committed said actions of an unreasonable character in disregard of risks known to Defendant Neal, or so obvious that he must be taken to have been aware

38

of it, and so great as to make it highly probable that harm would follow to Plaintiff as a result of his conduct.

162.    As a result of the above-stated actions of Defendant Neal, Plaintiff has suffered the above stated injuries/damages as set forth in paragraph one hundred and five (105).

WHEREFORE Plaintiff respectfully requests the following:

(a)    An award of compensatory damages against Defendant Neal, jointly and severally, in an amount in excess of $75,000.00;

(b)    An award of costs, expenses, and counsel fees pursuant to 42 U.S.C. Section 1988;

(c)    An award of punitive damages; and

(d)    Other relief as is just and proper.

## COUNT NINE:   MALICIOUS PROSECUTION: 42 U.S.C. SECTION 1983, ET SEQ.: AMBER PRICE V. STEVEN TOPRANI, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS DISTRICT ATTORNEY FOR WASHINGTON COUNTY

163.    Plaintiff incorporates Paragraphs one (1) through one hundred and sixty-two (162) as if set forth herein.

164.    Plaintiff had an established right under the Fourth Amendment to the United States Constitution and the Fourteenth Amendment to the United States Constitution to be free from arrest and prosecution for criminal charges without probable cause which are pursued maliciously, a right Defendant Toprani violated when, claiming to act under proper legal authority, filed, and then re-filed after their dismissal,

the above-stated criminal charges and actively participated in the commencement and/or maintenance of the above-stated criminal proceedings against Plaintiff.

165.    Defendant Toprani acted jointly with Defendant Neal in charging Plaintiff with the aforementioned crimes.

166.    Defendant Toprani conspired with Defendant Neal to charge Plaintiff with the aforementioned crimes knowing probable cause did not exist and because Plaintiff had complained about the video camera in a room where she dressed/undressed in violation of 42 U.S.C. 1983 and 42 U.S.C. 1985.

167.    Defendant Toprani pursued the above-stated prosecution of Plaintiff and/or the filing, and then re-filing, of the above-stated criminal charges against Plaintiff without any probable cause or reasonable basis for believing Plaintiff committed the above-stated offenses or any other crime in the Commonwealth of Pennsylvania, and after the above-stated criminal charges before and after such were dismissed by District Justice James Ellis.

168.    Defendant Toprani pursued the above-stated prosecution of Plaintiff and/or the filing, and then re-filing, of the above-stated criminal charges against Plaintiff with malice towards Plaintiff maliciously in that Plaintiff was charged because she had discovered and complained about the video recorder in the room where she dressed/undressed.

169.    The above-stated actions of Defendant Toprani constitute violations of 42 U.S.C. Section 1983, et seq.

170.    The above-stated actions of Defendant Toprani constitute violations of clearly established constitutional and statutory rights, which a reasonable person would be aware, and constitute outrageous conduct since it consisted of actions done with a bad motive and/or with a reckless indifference to the interests of Plaintiff in that Defendant Toprani intentionally committed said actions of an unreasonable character in disregard of risks known to Defendant Toprani, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow to Plaintiff as a result of his conduct.

171.    As a result of the above-stated actions of Defendant Toprani, Plaintiff has suffered the above stated injuries/damages as set forth in paragraph one hundred and five (105).

WHEREFORE Plaintiff respectfully requests the following:

(a)    An award of compensatory damages against all Defendant Toprani, joint and severally, in an amount in excess of $75,000.00;

(b)    An award of costs, expenses, and counsel fees pursuant to 42 U.S.C. Section 1988;

(c)    An award of punitive damages; and

(d)    Other relief as is just and proper.

**COUNT TEN:   FAIR TRIAL: 42 U.S.C. SECTION 1983, ET SEQ.:   AMBER PRICE V. CHRISTOPHER J. NEAL, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS TROOPER/CORPORAL OR LAW ENFORCEMENT OFFICIAL WITH THE PENNSYLVANIA SATE POLICE**

172.    Plaintiff incorporates Paragraphs one (1) through one hundred and seventy (170) as if set forth herein.

172.    Plaintiff had an established right under the Sixth Amendment to the United States Constitution and the Fourteenth Amendment to the United States Constitution to a fair trial, a right Defendant Neal violated when, he made the above-stated misrepresentations at the March 18, 2009 Preliminary Hearing, effectively denying Plaintiff's counsel right to cross-examine the prosecution's only witness against her and diminishing Plaintiff's opportunity to establish there was no probable cause to charge her with the aforementioned crimes.

173,    Defendant Neal acted with malice.

174.    The above-stated actions of Defendant Neal constitute violations of 42 U.S.C. Section 1983, et seq.

175.    The above-stated actions of Defendant Neal constitute violations of clearly established constitutional and statutory rights, which a reasonable person would be aware, and constitute outrageous conduct since it consisted of actions done with a bad motive and/or with a reckless indifference to the interests of Plaintiff in that Defendant Neal intentionally committed said actions of an unreasonable character in disregard of risks known to Defendant Neal, or so obvious that he must be taken to have been aware

42

of it, and so great as to make it highly probable that harm would follow to Plaintiff as a result of his conduct.

176.   As a result of the above-stated actions of Defendant Neal, Plaintiff has suffered the above-stated injuries/damages as set forth in paragraph one hundred and five (105).

WHEREFORE Plaintiff respectfully requests the following:

    (a)   An award of compensatory damages against all Defendant Neal, jointly and severally, in an amount in excess of $75,000.00;

    (b)   An award of costs, expenses, and counsel fees pursuant to 42 U.S.C. Section 1988;

    (c)   An award of punitive damages; and

    (d)   Other relief as is just and proper.

**COUNT ELEVEN:ABUSE OF PROCESS: AMBER PRICE V. CHRISTOPHER J. NEAL, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS TROOPER/CORPORAL OR LAW ENFORCEMENT OFFICIAL WITH THE PENNSYLVANIA SATE POLICE**

177.   Plaintiff incorporates Paragraphs one (1) through one hundred and seventy-six (176) as if set forth herein.

178.   Plaintiff had an established right to be subjected to criminal prosecution for an appropriate purpose, i.e. the punishment of those who commit crimes and to fair proceedings if so charged.

179.   Defendant Neal pursued the above-stated prosecution of Plaintiff and/or the filing, and then re-filing, of the above-stated criminal charges against Plaintiff

without any probable cause or reasonable basis for believing Plaintiff committed the above-stated offenses or any other crime in the Commonwealth of Pennsylvania, before and after the above-stated criminal charges were dismissed by District Justice James Ellis and did so to harass Plaintiff for finding the video camera in the room where she dressed/undressed and complaining about such.

180.    Defendant Neal acted jointly with Defendant Toprani in charging Plaintiff with the aforementioned crimes.

181.    Defendant Neal pursued the above-stated prosecution of Plaintiff and/or the filing, and then re-filing, of the above-stated criminal charges against Plaintiff with malice towards Plaintiff by making the above-stated misrepresentations against Plaintiff in the filing, and then re-filing, of his above-stated Affidavit of Probable Cause against Plaintiff and/or the above-stated misrepresentations he made at Plaintiff's March 18, 2009 Preliminary Hearing and/or re-filing of the above-stated criminal charges after they were dismissed by District Justice James Ellis which were done to harass Plaintiff for complaining about the aforementioned video camera.

182.    The above-stated actions of Defendant Neal constitute violations of clearly established constitutional and statutory rights, which a reasonable person would be aware, and constitute outrageous conduct since it consisted of actions done with a bad motive and/or with a reckless indifference to the interests of Plaintiff in that Defendant Neal intentionally committed said actions of an unreasonable character in disregard of risks known to Defendant Neal, or so obvious that he must be taken to have been aware

of it, and so great as to make it highly probable that harm would follow to Plaintiff as a result of his conduct.

183.    As a result of the above-stated actions of Defendant Neal, Plaintiff has suffered the above stated injuries/damages as set forth in paragraph one hundred and five (105).

WHEREFORE, Plaintiff claims compensatory and punitive damages against Defendant Neal, jointly and severally, in an amount in excess $75,000.00, plus interest and costs.

## COUNT TWELVE:ABUSE OF PROCESS: AMBER PRICE V. STEVEN TOPRANI, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS DISTRICT ATTORNEY FOR WASHINGTOM COUNTY

184.    Plaintiff incorporates Paragraphs one (1) through one hundred and eighty-three (183) as if set forth herein.

185.    Plaintiff had a right to be subjected to criminal prosecution for an appropriate purpose, i.e. the punishment of those who commit crimes and to fair proceedings if so charged.

186.    Defendant Toprani pursued the above-stated prosecution of Plaintiff and/or the filing, and then re-filing, of the above-stated criminal charges against Plaintiff without any probable cause or reasonable basis for believing Plaintiff committed the above-stated offenses or any other crime in the Commonwealth of Pennsylvania, and after the above-stated criminal charges were dismissed by District

Justice James Ellis and did so to harass Plaintiff for finding the video camera in the room where she dressed/undressed and complaining about such.

187.    Defendant Toprani pursued the above-stated prosecution of Plaintiff and/or the filing, and then re-filing, of the above-stated criminal charges against Plaintiff with malice towards Plaintiff.

188.    The above-stated actions of Defendant Toprani constitute violations of clearly established constitutional and statutory rights, which a reasonable person would be aware, and constitute outrageous conduct since it consisted of actions done with a bad motive and/or with a reckless indifference to the interests of Plaintiff in that Defendant Toprani intentionally committed said actions of an unreasonable character in disregard of risks known to Defendant Toprani, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow to Plaintiff as a result of his conduct.

189.    As a result of the above-stated actions of Defendant Toprani, Plaintiff has suffered the above stated injuries/damages as set forth in paragraph one hundred and five (105).

WHEREFORE, Plaintiff claims compensatory and punitive damages against Defendant Toprani, jointly and severally, in an amount in excess $75,000.00, plus interest and costs.

**COUNT THIRTEEN: ABUSE OF PROCESS: 42 U.S.C. SECTION 1983, ET SEQ.:**

**AMBER PRICE V. CHRISTOPHER J. NEAL, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS TROOPER OR LAW ENFORCEMENT OFFICIAL WITH THE PENNSYLVANIA SATE POLICE**

190.     Plaintiff incorporates Paragraphs one (1) through one hundred and eighty-nine (189) as if set forth herein.

191.     Plaintiff had an established right under the Fourth Amendment to the United States Constitution and the Fourteenth Amendment to the United States Constitution to be subjected to criminal prosecution for an appropriate purpose, i.e. the punishment of those who commit crimes and to fair proceedings if so charged.

192.     Defendant Neal pursued the above-stated prosecution of Plaintiff and/or the filing, and then re-filing, of the above-stated criminal charges against Plaintiff without any probable cause or reasonable basis for believing Plaintiff committed the above-stated offenses or any other crime in the Commonwealth of Pennsylvania, before and after the above-stated criminal charges were dismissed by District Justice James Ellis and did so to harass Plaintiff for finding the video camera in the room where she dressed/undressed and complaining about such.

193.     Defendant Neal acted jointly with Defendant Toprani in charging Plaintiff with the aforementioned crimes.

194.     Defendant Neal conspired with Defendant Toprani to charge Plaintiff with the aforementioned crimes knowing probable cause did not exist and because Plaintiff had complained about the video camera in a room where she dressed/undressed in

47

violation of 42 U.S.C. 1983 and 42 U.S.C. 1985 for the purpose of harassing Plaintiff for finding the video camera complaining about such.

195.   Defendant Neal pursued the above-stated prosecution of Plaintiff and/or the filing, and then re-filing, of the above-stated criminal charges against Plaintiff with malice towards Plaintiff by making the above-stated misrepresentations against Plaintiff in the filing, and then re-filing, of his above-stated affidavit of probable cause against Plaintiff and/or the above-stated misrepresentations he made at Plaintiff's March 18, 2009 Preliminary Hearing and/or re-filing of the above-stated criminal charges after they were dismissed by District Justice James Ellis.

196.   The above-stated actions of Defendant Neal constitute violations of 42 U.S.C. Section 1983, et seq.

197.   The above-stated actions of Defendant Neal constitute violations of clearly established constitutional and statutory rights, which a reasonable person would be aware, and constitute outrageous conduct since it consisted of actions done with a bad motive and/or with a reckless indifference to the interests of Plaintiff in that Defendant Neal intentionally committed said actions of an unreasonable character in disregard of risks known to Defendant Neal, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow to Plaintiff as a result of his conduct.

198.    As a result of the above-stated actions of Defendant Neal, Plaintiff has suffered the above stated injuries/damages as set forth in paragraph one hundred and five (105).

WHEREFORE Plaintiff respectfully requests the following:

(a)    An award of compensatory damages against Defendant Neal, jointly and severally, in an amount in excess of $75,000.00;

(b)    An award of costs, expenses, and counsel fees pursuant to 42 U.S.C. Section 1988;

(c)    An award of punitive damages; and

(d)    Other relief as is just and proper.

## COUNT FOURTEEN: ABUSE OF PROCESS: 42 U.S.C. SECTION 1983, ET SEQ.: AMBER PRICE V. STEVEN TOPRANI, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS DISTRICT ATTORNEY FOR WASHINGTOM COUNTY

199.    Plaintiff incorporates Paragraphs one (1) through one hundred and ninety-eight (198) as if set forth herein.

200.    Plaintiff had an established right under the Fourth Amendment to the United States Constitution and the Fourteenth Amendment to the United States Constitution to be subjected to criminal prosecution for an appropriate purpose, i.e. the punishment of those who commit crimes and to fair proceedings if so charged.

201.    Defendant Toprani pursued the above-stated prosecution of Plaintiff and/or the filing, and then re-filing, of the above-stated criminal charges against Plaintiff without any probable cause or reasonable basis for believing Plaintiff committed the above-stated offenses or any other crime in the Commonwealth of

Pennsylvania, and after the above-stated criminal charges were dismissed by District Justice James Ellis and did so to harass Plaintiff for finding the video camera in the room where she dressed/undressed and complaining about such.

202.    Defendant Toprani acted jointly with Defendant Neal in charging Plaintiff with the aforementioned crimes.

203.    Defendant Toprani conspired with Defendant Neal to charge Plaintiff with the aforementioned crimes knowing probable cause did not exist and because Plaintiff had complained about the video camera in a room where she dressed/undressed in violation of 42 U.S.C. 1983 and 42 U.S.C. 1985 for the purpose of harassing Plaintiff for finding the video camera in a room where she dressed/undressed and complained about such.

204.    Defendant Toprani pursued the above-stated prosecution of Plaintiff and/or the filing, and then re-filing, of the above-stated criminal charges against Plaintiff with malice towards Plaintiff by making the above-stated misrepresentations against Plaintiff in the filing, and then re-filing, of his above-stated affidavit of probable cause against Plaintiff and/or the above-stated misrepresentations he made at Plaintiff's March 18, 2009 Preliminary Hearing and/or re-filing of the above-stated criminal charges after they were dismissed by District Justice James Ellis.

205.    The above-stated actions of Defendant Toprani constitute violations of 42 U.S.C. Section 1983, et seq.

206. The above-stated actions of Defendant Toprani constitute violations of clearly established constitutional and statutory rights, which a reasonable person would be aware, and constitute outrageous conduct since it consisted of actions done with a bad motive and/or with a reckless indifference to the interests of Plaintiff in that Defendant Neal intentionally committed said actions of an unreasonable character in disregard of risks known to Defendant Neal, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow to Plaintiff as a result of his conduct.

207. As a result of the above-stated actions of Defendant Neal, Plaintiff has suffered the above stated injuries/damages as set forth in paragraph one hundred and five (105).

WHEREFORE Plaintiff respectfully requests the following:

(a) An award of compensatory damages against Defendant Toprani, jointly and severally, in an amount in excess of $75,000.00;

(b) An award of costs, expenses, and counsel fees pursuant to 42 U.S.C. Section 1988;

(c) An award of punitive damages; and

(d) Other relief as is just and proper.

**COUNT FIFTEEN – FALSE IMPRISONMENT: AMBER PRICE V. CHRISTOPHER J. NEAL, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS TROOPER OR LAW ENFORCEMENT OFFICIAL WITH THE PENNSYLVANIA SATE POLICE**

208. Plaintiff hereby incorporates one (1) through two-hundred and seven (207) of this Complaint as if set forth.

51

209.    The acts by Defendant of detaining and interrogating Plaintiff on January 8, 2009 of this Complaint constitute a false imprisonment by Defendant Neal against Plaintiff for the following reasons:

    a.    Defendant Neal knowingly, willfully and wantonly intended to take Plaintiff into custody, although Defendant had no lawful right to detain an interrogate Plaintiff; and

    b.    As a result Plaintiff suffered severe anxiety and psychological distress as a direct result of Defendant's actions described herein.

210.    The conduct of Defendant Neal, as mentioned above, was outrageous conduct since such consisted of acts done with a bad motive and/or with a reckless indifference to the interests of Plaintiff in that Defendant Neal intentionally committed acts of an unreasonable character in disregard of a risk known to Defendant Neal, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow to Plaintiff as the result of his conduct.

WHEREFORE, Plaintiff claims compensatory and punitive damages against Defendant Neal, jointly and severally in an amount in excess of $75,000.00, plus interest costs and attorneys fees.

## COUNT SIXTEEN – FALSE IMPRISONMENT: AMBER PRICE V. STEVEN TOPRANI, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS DISTRICT ATTORNEY FOR WASHINGTON COUNTY

211.    Plaintiff hereby incorporates one (1) through two-hundred and ten (210) of this Complaint as if the same were set forth at length herein.

212.    The acts of Defendant Toprani of detaining and interrogating Plaintiff on

January 14, 2009 constitute a false imprisonment by Defendant Toprani against Plaintiff

for the following reasons:

> a.    Defendant Toprani knowingly, willfully and wantonly intended to take Plaintiff into custody, although Defendant had no lawful right to detain and interrogate Plaintiff; and

> b.    As a result Plaintiff suffered severe anxiety and psychological distress as a direct result of Defendant's actions described herein.

213.    The conduct of Defendant Toprani, as mentioned above, was outrageous

conduct since such consisted of acts done with a bad motive and/or with a reckless

indifference to the interests of Plaintiff in that Defendant Toprani intentionally

committed acts of an unreasonable character in disregard of a risk known to Defendant

Toprani, or so obvious that he must be taken to have been aware of it, and so great as to

make it highly probable that harm would follow to Plaintiff as the result of his conduct.

WHEREFORE, Plaintiff claims compensatory and punitive damages against

Defendant Toprani, jointly and severally, in an amount in excess of $75,000.00, plus

interest, costs and attorneys fees.

### COUNT SEVENTEEN – FALSE IMPRISONMENT:
### AMBER PRICE V. AARON BORELLO, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS TROOPER OR LAW ENFORCEMENT OFFICIAL WITH THE PENNSYLVANIA SATE POLICE

214.    Plaintiff hereby incorporates one (1) through two hundred and thirteen

(213) of this Complaint as if the same were set forth at length herein.

215.    The acts of Defendant Borello of detaining Plaintiff and interrogating her

on January 14, 2009 constitute a false imprisonment by Defendant Borello against

Plaintiff for the following reasons:

  a. Defendant Borello knowingly, willfully and wantonly intended to take Plaintiff into custody, although Defendant had no lawful right to detain Plaintiff and interrogate her; and

  b. As a result Plaintiff suffered severe anxiety and psychological distress as a direct result of Defendant's actions described herein.

216. The conduct of Defendant Borello, as mentioned above, was outrageous conduct since such consisted of acts done with a bad motive and/or with a reckless indifference to the interests of Plaintiff in that Defendant Borello intentionally committed acts of an unreasonable character in disregard of a risk known to Defendant Borello, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow to Plaintiff as the result of his conduct.

WHEREFORE, Plaintiff claims compensatory and punitive damages against Defendant Borello, jointly and severally in an amount in excess of $75,000.00, plus interest costs and attorneys fees.

### COUNT EIGHTEEN:   FALSE IMPRISONMENT:   42 U.S.C. SECTION 1983, ET SEQ.:   AMBER PRICE V. CHRISTOPHER J.NEAL. INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS TROOPER OR LAW ENFORCEMENT OFFICIAL WITH THE PENNSYLVANIA SATE POLICE

217. Plaintiff incorporates Paragraphs one (1) through two hundred and sixteen (216) as if set forth herein.

218. Plaintiff had an established right under the Fourth Amendment to the United States Constitution, the Fifth Amendment to the United States Constitution and the Fourteenth Amendment to the United States Constitution to be free from

54

unreasonable seizure of her person, unreasonable searches of her property and unlawful interrogation, a right Defendant Neal violated when, claiming to act under proper legal authority, committed the following actions, including but not limited to:

    a.    On or about January 8, 2009, directing Plaintiff to "meet in private" and detaining and interrogating Plaintiff regarding Michael North, Harold Dean Huber, and the arrest of Harold Dean Huber.

219.    Defendant Neal committed the above-stated detention and/or interrogation of Plaintiff without any probable cause or reasonable basis for believing Plaintiff committed any crime in the Commonwealth of Pennsylvania and/or without any lawful purpose.

220.    The above-stated actions of Defendant Neal constitute violations of 42 U.S.C. Section 1983 et seq.

221.    Defendant Neal acted jointly with Defendant Toprani and Trooper Motte (acting under color of law) in subjecting Plaintiff to unlawful custodial interrogation,

222.    Defendant Neal had a duty to uphold the law and stop Defendant Toprani and Trooper Motte from subjecting Plaintiff to unlawful custodial interrogation.

223.    Defendant Neal conspired with Defendant Toprani and Trooper Motte in subjecting Plaintiff to unlawful custodial interrogation in violation of 42 U.S.C. Sec. 1983 and 42 U.S.C. Sec. 1985

224.    The above-stated actions of Defendant Neal constitute violations of clearly established constitutional and statutory rights, which a reasonable person would be aware, and constitute outrageous conduct since it consisted of actions done with a bad

motive and/or with a reckless indifference to the interests of Plaintiff in that Defendant Neal intentionally committed said actions of an unreasonable character in disregard of risks known to Defendant Neal, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow to Plaintiff as a result of his conduct.

225.    As a result of the above-stated actions of Defendant Neal, Plaintiff has suffered the above-stated injuries/damages as set forth in paragraph one hundred and five (105).

WHEREFORE Plaintiff respectfully requests the following:

(a)    An award of compensatory damages against all Defendant Neal, joint and severally, in an amount in excess of $75,000.00;

(b)    An award of costs, expenses, and counsel fees pursuant to 42 U.S.C. Section 1988;

(c)    An award of punitive damages; and

(d)    Other relief as is just and proper.

**COUNT NINETEEN:   FALSE IMPRISONMENT:   42 U.S.C. SECTION 1983, ET SEQ.:   AMBER PRICE V. STEVEN M. TOPRANI, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS DISTRICT ATTORNEY FOR WASHINGTON COUNTY**

226.    Plaintiff incorporates Paragraphs one (1) through two hundred and twenty-five (225) as if set forth herein.

227.    Plaintiff had an established right under the Fourth Amendment to the United States Constitution, the Fifth Amendment to the United States Constitution and the Fourteenth Amendment to the United States Constitution to be free from

56

unreasonable seizure of her person, unreasonable searches of her property and unlawful interrogation, a right Defendant Toprani violated when, claiming to act under proper legal authority, committed the following actions, including but not limited to:

      a.     On or about January 14, 2009, directing Plaintiff to "meet in private" and detaining and interrogating Plaintiff regarding Derek Dayoub.

228.    Defendant Toprani committed the above-stated detention and/or interrogation of Plaintiff without any probable cause or reasonable basis for believing Plaintiff committed any crime in the Commonwealth of Pennsylvania and/or without any lawful purpose.

229.    The above-stated actions of Defendant Toprani constitute violations of 42 U.S.C. Section 1983 et seq.

230.    Defendant Toprani acted jointly with Defendant Borello in subjecting Plaintiff to unlawful custodial interrogation,

231.    Defendant Toprani had a duty to uphold the law and stop Defendant Neal in subjecting Plaintiff to unlawful custodial interrogation.

232.    Defendant Toprani conspired with Defendant Borello in subjecting Plaintiff to unlawful custodial interrogation in violation of 42 U.S.C. Sec. 1983 and 42 U.S.C. Sec. 1985

233.    The above-stated actions of Defendant Toprani constitute violations of clearly established constitutional and statutory rights, which a reasonable person would be aware, and constitute outrageous conduct since it consisted of actions done with a

bad motive and/or with a reckless indifference to the interests of Plaintiff in that Defendant Toprani intentionally committed said actions of an unreasonable character in disregard of risks known to Defendant Toprani, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow to Plaintiff as a result of his conduct.

234.    As a result of the above-stated actions of Defendant Toprani, Plaintiff has suffered the above-stated injuries/damages as set forth in paragraph one hundred and five (105).

WHEREFORE Plaintiff respectfully requests the following:

(a)    An award of compensatory damages against all Defendant Toprani, joint and severally, in an amount in excess of $75,000.00;

(b)    An award of costs, expenses, and counsel fees pursuant to 42 U.S.C. Section 1988;

(c)    An award of punitive damages; and

(d)    Other relief as is just and proper.

**COUNT EIGHTEEN:   FALSE IMPRISONMENT:   42 U.S.C. SECTION 1983, ET SEQ.:    AMBER PRICE V. AARON BORELLO, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS TROOPER OR LAW ENFORCEMENT OFFICIAL WITH THE PENNSYLVANIA SATE POLICE**

235.    Plaintiff incorporates Paragraphs one (1) through two hundred and thirty-four (234) as if set forth herein.

236.    Plaintiff had an established right under the Fourth Amendment to the United States Constitution, the Fifth Amendment and the Fourteenth Amendment to the

United States Constitution to be free from unreasonable seizure of her person and unreasonable searches of her property and unlawful interrogation, a right Defendant Borello violated when, claiming to act under proper legal authority, committed the following actions, including but not limited to:

      a.      On or about January 14, 2009, directing Plaintiff to "meet in private" and detaining and interrogating Plaintiff regarding Derek Dayoub.

237.   Defendant Borello committed the above-stated detention and/or interrogation of Plaintiff without any probable cause or reasonable basis for believing Plaintiff committed any crime in the Commonwealth of Pennsylvania and/or without any lawful purpose.

238.   The above-stated actions of Defendant Borello constitute violations of 42 U.S.C. Section 1983 et seq.

239.   Defendant Borello acted jointly with Defendant Toprani in subjecting Plaintiff to unlawful custodial interrogation,

240.   Defendant Borello had a duty to uphold the law and stop Defendant Toprani in subjecting Plaintiff to unlawful custodial interrogation.

241.   Defendant Borello conspired with Defendant Toprani in subjecting Plaintiff to unlawful custodial interrogation in violation of 42 U.S.C. Sec. 1983 and 42 U.S.C. Sec. 1985

242.   The above-stated actions of Defendant Borello constitute violations of clearly established constitutional and statutory rights, which a reasonable person would

be aware, and constitute outrageous conduct since it consisted of actions done with a bad motive and/or with a reckless indifference to the interests of Plaintiff in that Defendant Borello intentionally committed said actions of an unreasonable character in disregard of risks known to Defendant Borello, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow to Plaintiff as a result of his conduct.

243.    As a result of the above-stated actions of Defendant Borello, Plaintiff has suffered the above-stated injuries/damages as set forth in paragraph one hundred and five (105).

WHEREFORE Plaintiff respectfully requests the following:

(a)    An award of compensatory damages against all Defendant Borello, jointly and severally, in an amount in excess of $75,000.00;

(b)    An award of costs, expenses, and counsel fees pursuant to 42 U.S.C. Section 1988;

(c)    An award of punitive damages; and

(d)    Other relief as is just and proper.

**COUNT NINETEEN: EQUAL PROTECTION: 42 U.S.C. SECTION 1983, ET SEQ.: AMBER PRICE V. BORUGH OF BURGETTSTOWN**

244.    Plaintiff incorporates Paragraphs one (1) through two hundred and forty-three (243) as if set forth herein.

245.    Plaintiff was denied the right to equal protection provided to her by the Fourteenth Amendment to Constitution of the United States of America by Defendant

Borough of Burgettstown's refusal to provide her with a locker as provided to every male officer employed by Defendant while Plaintiff was employed as a police officer.

246.    By denying Plaintiff a locker such as that provided to each and every male officer, Defendant forced Plaintiff to get dressed/undressed in a room where Defendant Roberts placed a video camera.

247.    The above-stated actions of Defendant Borough of Burgettstown constitute violations of 42 U.S.C. Section 1983 et seq.

248.    The above-stated actions of Defendant Borough of Burgettstown constitute violations of clearly established constitutional and statutory rights, which a reasonable person would be aware, and constitute outrageous conduct since it consisted of actions done with a bad motive and/or with a reckless indifference to the interests of Plaintiff in that Defendant Borough of Burgettstown intentionally committed said actions of an unreasonable character in disregard of risks known to Defendant Burgettstown or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow to Plaintiff as a result of his conduct.

249.    As a result of the above-stated actions of Defendant Borough of Burgettstown, Plaintiff has suffered the above-stated injuries/damages as set forth in paragraph one hundred and five (105).

WHEREFORE Plaintiff respectfully requests the following:

(a)    An award of compensatory damages against all Defendant Borough of Burgettstown, jointly and severally, in an amount in excess of $75,000.00;

61

(b)     An award of costs, expenses, and counsel fees pursuant to 42 U.S.C. Section 1988;

(c)     An award of punitive damages; and

(d)     Other relief as is just and proper.

**COUNT TWENTY: EQUAL PROTECTION: 42 U.S.C. SECTION 1983, ET SEQ.: AMBER PRICE V. AMBER PRICE V. GEORGE ROBERTS, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS CHIEF OF THE BURGETTSTOWN POLICE DEPARTMENT**

250.     Plaintiff incorporates Paragraphs one (1) through two hundred and forty-nine (249) as if set forth herein.

251.     Plaintiff was denied the right to Equal Protection provided to her by the Fourteenth Amendment to Constitution of the United States of America by Defendant Roberts refusal to provide her with a locker as provided to every male officer employed by Defendant while Plaintiff was employed as a police officer with Defendant Borough of Burgettstown..

252.     By denying Plaintiff a locker such as that provided to each and every male officer, Defendant Roberts forced Plaintiff to get dressed/undressed in a room where Defendant Roberts placed a video camera.

253.     The above-stated actions of Defendant Roberts constitute violations of 42 U.S.C. Section 1983 et seq.

254.     The above-stated actions of Defendant Roberts constitute violations of clearly established constitutional and statutory rights, which a reasonable person would

62

be aware, and constitute outrageous conduct since it consisted of actions done with a bad motive and/or with a reckless indifference to the interests of Plaintiff in that Defendant Roberts intentionally committed said actions of an unreasonable character in disregard of risks known to Defendant Roberts, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow to Plaintiff as a result of his conduct.

255.    As a result of the above-stated actions of Defendant Roberts, Plaintiff has suffered the above-stated injuries/damages as set forth in paragraph one hundred and five (105).

WHEREFORE Plaintiff respectfully requests the following:

(a)    An award of compensatory damages against Defendant Roberts, joint and severally, in an amount in excess of $75,000.00;

(b)    An award of costs, expenses, and counsel fees pursuant to 42 U.S.C. Section 1988;

(c)    An award of punitive damages; and

(d)    Other relief as is just and proper.

**COUNT TWENTY-ONE:   TITLE VII: 42 U.S.C. SECTION 1983, ET SEQ: AMBER PRICE V. BOROUGH OF BURGETTSTOWN.**

256.    Plaintiff incorporates Paragraphs one (1) through one hundred and fifty-five (255) as if set forth herein.

257. Pursuant to the Title Seven of the Civil Rights Act of 1964, 42 U.S.C. Section 2000(e), Defendant Borough of Burgettstown is required to ensure equal employment opportunities without discrimination on the basis of sex.

258. Defendant Borough of Burgettstown violated Title Seven of the Civil Rights Act of 1964, 42 U.S.C. Section 2000(e) as a result of the above-stated actions of Defendant Roberts and/or other municipal employees in failing to provide Plaintiff a locker to dress/undress and despite repeated requests by Plaintiff.

259. As a result; Plaintiff was required to dress/undress in the above-stated room that the hidden video camera faced.

260. As a result of being denied equal treatment, i.e. the use of a locker, by Defendant Roberts and/or Defendant Borough of Burgettstown, Plaintiff suffered the above-stated injuries/damages and may have been video recorded in the acts of dressing/undressing.

261. Defendant Borough of Burgettstown is responsible for the above-stated actions of Defendant Roberts and/or other municipal employees as a result of implementing policy and/or practices and/or customs that violate the above-stated constitutionally protected rights and/or statues by encouraging and/or allowing the above-stated conduct by the following particulars, including but not limited to:

      a.    Sanctioning and/or condoning and/or acquiescing to the above-stated conduct by municipal employees such as Defendant Roberts;

b.      Hiring and/or retaining law municipal employees, such as Defendant Roberts, who engage in the above-stated conduct;

c.      Failing to adequately and/or properly train and/or discipline municipal employees personnel, such as Defendant Roberts, so as to prevent the above-stated conduct;

d.      Improperly and/or inadequately investigating complaints of improper conduct on the part of municipal employees, including Defendant Roberts;

e.      Allowing municipal employees, such as Defendant Roberts, who engage in improper conduct, to continue service with the public;

f.      Allowing law municipal employees, such as Defendant Roberts, who engage in improper conduct, to continue service with the public without proper and/or adequate training and/or discipline; and/or

g.      Knowing and/or should have knowing of Defendant Robert's history and, as a matter of *de facto* policy and/or custom, permitted and/or encouraged the above-stated conduct by failing to properly train and/or discipline and/or terminate Defendant Roberts; and

h.      As a matter of policy and/or practice and/or custom, refusing to provide Plaintiff a locker to dress/undress despite the fact that male Burgettstown police officers were provided lockers to dress/undress and despite repeated requests by Plaintiff.

262.   As a result of the above-stated actions of Defendant Borough of Burgettstown, Plaintiff has suffered the above-stated injuries/damages as set forth in paragraph one hundred and five (105).

263.   The above-stated actions/ or policies and/or practices and/or customs maintained by Defendant Borough of Burgettstown exhibited deliberate indifference to the above-stated, constitutionally protected rights and/or statutes and to Plaintiff, which

caused the above-stated violations of Plaintiff's rights and Plaintiff's above-stated injuries/damages.

WHEREFORE Plaintiff respectfully requests the following:

   (a) An award of compensatory damages against Defendant Borough of Burgettstown, jointly and severally, in an amount in excess of $75,000.00;

   (b) An award of costs, expenses, and counsel fees pursuant to 42 U.S.C. Section 1988;

   (c) An award of punitive damages; and

   (d) Other relief as is just and proper.

**COUNT TWENTY-TWO: TITLE VII: 42 U.S.C. SECTION 1983, ET SEQ: AMBER PRICE V. GEORGE ROBERTS, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS CHIEF OF THE BURGETTSTOWN POLICE DEPARTMENT**

264. Plaintiff incorporates Paragraphs one (1) through two hundred and sixty-three (263) as if set forth herein.

265. Pursuant to the Title Seven of the Civil Rights Act of 1964, 42 U.S.C. Section 2000(e), Defendant Roberts is required to ensure equal   employment opportunities without discrimination on the basis of sex.

266. Defendant Borough of Burgettstown violated Title Seven of the civil Rights Act of 1964, 42 U.S.C. Section 2000(e) as a result of the above-stated actions of Defendant Roberts and/or other municipal employees in failing to provide Plaintiff a locker to dress/undress and despite repeated requests by Plaintiff.

267.    As a result; Plaintiff was required to dress/undress in the above-stated room that the hidden video camera faced.

268.    As a result of being denied equal treatment, i.e. the use of a locker, by Defendant Roberts and/or Defendant Borough of Burgettstown, Plaintiff suffered the above-stated injuries/damages and may have been video recorded in the acts of dressing/undressing.

WHEREFORE Plaintiff respectfully requests the following:

(a)    An award of compensatory damages against all Defendant Roberts, joint and severally, in an amount in excess of $75,000.00;

(b)    An award of costs, expenses, and counsel fees pursuant to 42 U.S.C. Section 1988;

(c)    An award of punitive damages; and

(d)    Other relief as is just and proper.

**COUNT TWENT-THREE: POLICY AND/OR PRACTICE:   42 U.S.C. SECTION 1983, ET SEQ.:   AMBER PRICE V. FRANK PAWLOWSKI, COMMISIONER OF THE PENNSYLVANIA STATE POLICE.**

269.    Plaintiff incorporates Paragraphs one (1) through two hundred and sixty-eight (268) as if set forth herein.

270.    Defendant Pawlowski, as Commissioner, is responsible for the above-stated actions of Defendant Neal and Defendant Borello as their above-stated actions were committed under color of law and/or during the course of their employment and/or duties as Pennsylvania State Police Troopers.

271.   Defendant Pawlowski, as Commissioner, is responsible for the above-stated actions of Defendant Neal and Defendant Borello as a result of implementing policies and/or practices and/or customs that violate the above-stated constitutionally protected rights and/or statutes by encouraging and/or allowing the above-stated conduct by the following particulars, including but not limited to:

a.   Sanctioning and/or condoning and/or acquiescing to the above-stated conduct by troopers, such as Defendant Neal and Defendant Borello;

b.   Hiring and/or retaining troopers, such as Defendant Neal and Defendant Borello, who engage in the above-stated conduct;

c.   Failing to adequately and/or properly train and/or discipline troopers, such as Defendant Neal and Defendant Borello, so as to prevent the above-stated conduct;

d.   Improperly and/or inadequately investigating complaints of improper conduct on the part of troopers, including Defendant Neal and Defendant Borello;

e.   Allowing troopers, such as Defendant Neal and Defendant Borello, who engage in improper conduct, to continue service with the public;

f.   Allowing troopers, such as Defendant Neal and Defendant Borello, who engage in improper conduct, to continue service with the public without proper and/or adequate training and/or discipline; and/or

g.   Knowing and/or should have knowing of Defendant Neal's and Defendant Borello's history and, as a matter of *de facto* policy and/or custom, permitted and/or encouraged the above-stated conduct by failing to properly train and/or discipline and/or terminate Defendant Neal and Defendant Borello.

272.    The above-stated actions of Defendant Pawlowski, as Commissioner, constitute violations of 42 U.S.C. Section 1983 et seq.

273.    The above-stated actions of Defendant Pawlowski, as Commissioner, constitute violations of clearly established constitutional and statutory rights, which a reasonable person would be aware, and constitute outrageous conduct since it consisted of actions done with a bad motive and/or with a reckless indifference to the interests of Plaintiff in that Defendant Pawlowski, as Commissioner intentionally committed said actions of an unreasonable character in disregard of risks known to Defendant Pawlowski, as Commissioner, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow to Plaintiff as a result of his conduct.

274.    As a result of the above-stated actions of Defendant Pawlowski, as Commissioner, Plaintiff has suffered the above-stated injuries/damages as set forth in paragraph one hundred and five (105).

275.    The above-stated actions and/or policies and/or practices and/or customs maintained by Defendant Pawlowski, as Commissioner, and The Pennsylvania State Police exhibited deliberate indifference to the above-stated constitutionally protected rights and/or statutes and to the citizens of the Commonwealth of Pennsylvania, including Plaintiff, which caused the above-stated violations of Plaintiff's rights and Plaintiff's above-stated injuries/damages.

WHEREFORE Plaintiff respectfully requests the following:

      (a)      An award of compensatory damages against Defendant Pawlowski, Commissioner, jointly and severally, in an amount in excess of $75,000.00;

      (b)      An award of costs, expenses, and counsel fees pursuant to 42 U.S.C. Section 1988;

      (c)      An award of punitive damages; and

      (d)      Other relief as is just and proper.

**COUNT TWENTY -FOUR:   POLICY AND/OR PRACTICE:   42 U.S.C. SECTION 1983, ET SEQ.:   AMBER PRICE V. WASHINGTON COUNTY.**

276.   Plaintiff incorporates Paragraphs one (1) through two hundred and seventy-five (275) as if set forth herein.

277.   Defendant Washington County is responsible for the above-stated actions of Defendant Aaron as his above-stated actions were committed under the color of law and/or during the course of his employment and/or duties.

278.   Defendant Washington County is responsible for the above-stated actions of Defendant Aaron as a result of implementing policy and/or practices and/or customs that violate the above-stated constitutionally protected rights and/or statutes by encouraging and/or allowing the above-stated conduct by the following particulars, including but not limited to:

      a.      Sanctioning and/or condoning and/or acquiescing to the above-stated conduct by law enforcement personnel such as Defendant Aaron;

      b.      Hiring and/or retaining detectives, such as Defendant Aaron, who engage in the above-stated conduct;

     c.      Failing to adequately and/or properly train and/or discipline detectives, such as Defendant Aaron, so as to prevent the above-stated conduct;

     d.      Improperly and/or inadequately investigating complaints of improper conduct on the part of law enforcement personnel, including Defendant Aaron;

     e.      Allowing detectives, such as Defendant Aaron, who engage in improper conduct, to continue service with the public;

     f.      Allowing detectives, such as Defendant Aaron, who engage in improper conduct, to continue service with the public without proper and/or adequate training and/or discipline; and/or

     g.      Knowing and/or should have knowing of Defendant Aaron's history and, as a matter of *de facto* policy and/or custom, permitted and/or encouraged the above-stated conduct by failing to properly train and/or discipline and/or terminate Defendant Aaron.

279.    The above-stated actions of Defendant Washington County constitute violations of 42 U.S.C. Section 1983 et seq.

280.    As a result of the above-stated actions of Defendant Washington County, Plaintiff has suffered above-stated injuries/damages as set forth in paragraph one hundred and five (105).

281.    The above-stated actions and/or policies and/or practices and/or customs maintained by Defendant Washington County exhibited deliberate indifference to the above-stated constitutionally protected rights and/or statutes and to the citizens of the Commonwealth of Pennsylvania, including Plaintiff, which caused the

above-stated violations of Plaintiff's rights and Plaintiff's above-stated injuries/damages as set forth in paragraph one hundred and five (105).

WHEREFORE Plaintiff respectfully requests the following:

(a)     An award of compensatory damages against Defendant Washington County, jointly and severally, in an amount in excess of $75,000.00;

(b)     An award of costs, expenses, and counsel fees pursuant to 42 U.S.C. Section 1988;

(c)     An award of punitive damages; and

(d)     Other relief as is just and proper.

## COUNT TWENTY-FIVE:   POLICY AND/OR PRACTICE:   42 U.S.C. SECTION 1983, ET SEQ.:   AMBER PRICE V. BOROUGH OF BURGETTSTOWN.

282.     Plaintiff incorporates Paragraphs one (1) through two hundred and eighty –one (281) as if set forth herein.

283.     Defendant Borough of Burgettstown is responsible for the above-stated actions of Defendant Roberts as his above-stated actions were committed under the color of law and/or during the course of his employment and/or duties.

284.     Defendant Borough of Burgettstown is responsible for the above-stated actions of Defendant Roberts as a result of implementing policy and/or practices and/or customs that violate the above-stated constitutionally protected rights and/or statutes by encouraging and/or allowing the above-stated conduct by the following particulars, including but not limited to:

72

a.  Sanctioning and/or condoning and/or acquiescing to the above-stated conduct by law enforcement personnel such as Defendant Roberts;

b.  Hiring and/or retaining law enforcement personnel, such as Defendant Roberts, who engage in the above-stated conduct;

c.  Failing to adequately and/or properly train and/or discipline law enforcement personnel, such as Defendant Roberts, so as to prevent the above-stated conduct;

d.  Improperly and/or inadequately investigating complaints of improper conduct on the part of law enforcement personnel, including Defendant Roberts;

e.  Allowing law enforcement personnel, such as Defendant Roberts, who engage in improper conduct, to continue service with the public;

f.  Allowing law enforcement personnel, such as Defendant Roberts, who engage in improper conduct, to continue service with the public without proper and/or adequate training and/or discipline; and/or

g.  Knowing and/or should have knowing of Defendant Robert's history and, as a matter of *de facto* policy and/or custom, permitted and/or encouraged the above-stated conduct by failing to properly train and/or discipline and/or terminate Defendant Roberts.

285.  The above-stated actions of Defendant Borough of Burgettstown constitute violations of 42 U.S.C. Section 1983 et seq.

286.  As a result of the above-stated actions of Defendant Borough of Burgettstown, Plaintiff has suffered the above-stated injuries/damages as set forth in paragraph one hundred and five (105).

287.     The above-stated actions and/or policies and/or practices and/or customs maintained by Defendant Borough of Burgettstown exhibited deliberate indifference to the above-stated, constitutionally protected rights and/or statutes and to the citizens of the Commonwealth of Pennsylvania, including Plaintiff, which caused the above-stated violations of Plaintiff's rights and Plaintiff's above-stated injuries/damages.

WHEREFORE Plaintiff respectfully requests the following:

(a)     An award of compensatory damages against all Defendant Borough of Burgettstown, joint and severally, in an amount in excess of $75,000.00;

(b)     An award of costs, expenses, and counsel fees pursuant to 42 U.S.C. Section 1988;

(c)     An award of punitive damages; and

(d)     Other relief as is just and proper.

## REQUEST FOR JURY TRIAL

Plaintiff hereby requests a jury on all claims for which she is entitled to jury trial.

/s/ Michael P. Petro, Esquire
Michael P. Petro, Esquire
Pa. I.D. 76688
700 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA 15219
(412) 288-0301

/s/ Robert E. Mielnicki, Esquire
Robert E. Mielnicki, Esquire

Pa. I.D. 63489
700 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA 15219
(412) 288-0301