IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMBER PRICE,<br>Plaintiff, | ) | |
| vs. | ) | Civil Action No. 10-1574 |
| GEROGE ROBERTS, et al.,<br>Defendants. | ) | Magistrate Judge Mitchell |

MEMORANDUM OPINION

Plaintiff, Amber Price, a former police officer in the Borough of Burgettstown, brings this civil rights action pursuant to 42 U.S.C. § 1983, alleging various federal and state law claims arising out of her allegation that she was not provided a locker as were male police officers, her discovery of a hidden video camera in the room at the police station where she alleges she was forced to dress and undress, and criminal charges that were filed against her in 2009 and later withdrawn after she reported the hidden video camera. She names three groups of defendants: 1) three members of the Pennsylvania State Police (Corporal Christopher J. Neal, Trooper Aaron Borello and former Commissioner Frank Pawlowski) (together, the "PSP Defendants"); 2) the Borough of Burgettstown and Borough Chief of Police George Roberts (together, the "Burgettstown Defendants"); and 3) Washington County, Pennsylvania, Washington County Chief Detective J. Michael Aaron and District Attorney Steven M. Toprani (together, the "Washington County Defendants").

Currently pending for disposition is a motion to dismiss filed by the PSP Defendants. For the reasons that follow, the motion will be granted with respect to Counts 4, 5, 8, 10, 11, 15, 17 and 25 and the official capacity aspect of the claims in Counts 13, 18 and 20. The motion will be denied with respect to the individual capacity aspect of the claims in Counts 13, 18 and 20.

Finally, Plaintiff may amend the complaint to amplify her allegations regarding the § 1983 abuse of process claim against Corporal Neal in Count 13 and her § 1983 false imprisonment claims in Counts 18 and 20 and to add a claim of retaliatory prosecution.

Facts

Plaintiff was employed as a police officer for the Borough of Burgettstown from some point in 2002 until February 4, 2009. She alleges that, during that time, she was the only female police officer employed with the Borough and that she was not afforded the same accommodations as the male officers, including a locker and a suitable place to get dressed and undressed. (Compl. ¶¶ 13-14.) Rather, for six years, and despite her repeated requests for a locker, she was required by Borough Chief of Police George Roberts ("Chief Roberts") and the Borough to dress and undress in a particular room at the police station. (Compl. ¶¶ 21, 93, 101-02.)

On November 26, 2008, Plaintiff discovered a video camera hidden in a ceiling vent in the room, along with cords/wires attached to the video camera that had been hidden by ceiling tiles and were connected to an electrical outlet and other cords/wires that ran to the storage/evidence room. She alleges that Chief Roberts and Washington County Chief Detective J. Michael Aaron ("Chief Detective Aaron") knew that she used this room to dress and undress, that they placed the video camera in the room at the direction of or with the approval of Washington County District Attorney Steven M. Toprani ("D.A. Toprani"), and that other Burgettstown police officers and/or municipal employees knew or should have known that she dressed and undressed in the room the camera faced. (Compl. ¶¶ 22-25, 27.) Plaintiff believes that the camera was placed in the room to capture video of another officer having sex with a female acquaintance, possibly for the purpose of blackmailing that officer. (Compl. ¶¶ 26, 28.)

Plaintiff reported the placement of the hidden video camera to the Pennsylvania Attorney General's Office. On or about December 18, 2008, the Attorney General's Office notified her that she must first report the camera to the Washington County District Attorney's Office to conduct an inquiry and determine if any conflict existed that would prevent it from conducting an investigation. On or about December 20, 2008, Plaintiff and her father, Robert Price, met with Chief Detective Aaron at his residence to discuss the placement of the hidden video camera. (Compl. ¶¶ 29-31.)

Chief Detective Aaron informed Plaintiff that, on October 15, 2008, he had brought the video camera from the Washington County District Attorney's Office to the Burgettstown Police Station, where he and Chief Roberts installed it. He further stated that the camera was connected to a video cassette recorder located in a locked storage/evidence room at the police station, that the camera had recorded images of the room where she dressed and undressed and that it had possibly recorded images of her dressing and undressing. He stated that he would refer the matter to the Attorney General's Office for investigation. (Compl. ¶¶ 32-37.)

January 8, 2009 Interrogation

On January 8, 2009, Plaintiff was at the Burgettstown Police Station when Chief Roberts told her not to leave the station because "men in suits" wanted to talk to her. Shortly thereafter, Corporal Neal and Trooper Timothy Motte of the PSP arrived at the station and directed her to "meet in private." Subsequently, they, along with D.A. Toprani, conducted an interrogation of Plaintiff regarding Michael North, Harold Dean Huber and the arrest of Harold Dean Huber. (Compl. ¶¶ 38-42.)

On March 21, 2008, Plaintiff had assisted Officer Michael North, a Smith Township, Pennsylvania police officer, in a vehicle stop and arrest of Harold Dean Huber for violations of

the Pennsylvania Controlled Substance, Drug, Device and Cosmetic Act. Specifically, Huber's vehicle was stopped and he was found to be in possession of a quantity of controlled substances consistent with his intent to deliver. (Compl. ¶ 15.) Officer North, who believed that controlled substances might be found in the home of Harold Dean Huber, prepared an affidavit of probable cause for a search warrant of Huber's home (the "search warrant affidavit") and gave it to Plaintiff to sign and present to a Washington County magisterial district judge.[1] However, the search warrant affidavit stated that "this officer saw Huber leaving his residence," such that when Plaintiff signed it, she erroneously indicated that she had seen Huber leaving his residence a short time before he was stopped in his vehicle where controlled substances were found. Plaintiff states that she overlooked this statement because she was in a hurry and that her own affidavit of probable cause for the criminal complaint (the "complaint affidavit") and her police report made it clear that she had not seen Huber leave his residence that morning. She presented the search warrant affidavit to a magisterial district judge that same day, March 21, 2008, and it was signed, thereby authorizing a search of Huber's home. (Compl. ¶¶ 16-20.)

When Corporal Neal interrogated her on January 8, 2009 about the Huber incident, Plaintiff came to believe that he was in the process of filing criminal charges against her, acting at the direction of Chief Detective Aaron and D.A. Toprani. She states that she did not believe that she was free to discontinue the interrogation and leave the premises without subjecting herself to arrest and/or the use of physical restraint and that her belief was reasonable. She also alleges that Chief Roberts, who was an acquaintance of Harold Dean Huber, was aware of and/or assisted in this interrogation. (Compl. ¶¶ 43-48.)

[1]Although the Complaint uses various references, effective January 29, 2005, district justices were renamed magisterial district judges.

January 14, 2009 Interrogation

On January 14, 2009, Plaintiff learned of the arrest of Smith Township Police Officer Derek Dayoub, an acquaintance of hers, and she traveled to the State Police barracks in Washington, Pennsylvania, where he was being detained. When she arrived, she was confronted by Trooper Aaron Borello and D.A. Toprani and was directed to an upstairs room to "meet in private." Subsequently, Trooper Borello and D.A. Toprani conducted an interrogation, which included questioning Plaintiff regarding Officer Dayoub, her relationship with him and his ethnicity. Again, she states that she did not believe that she was free to discontinue the interrogation and leave the premises without subjecting herself to arrest and/or the use of physical restraint and that her belief was reasonable. In fact, she repeatedly asked if she could leave and was told she could not. (Compl. ¶¶ 49-55.)

Charges Are Filed

On or about February 5, 2009, Corporal Neal filed a criminal complaint before Magisterial District Judge Gary Havelka, charging Plaintiff with the following crimes: 1) criminal conspiracy to commit the crimes of official oppression and false swearing in official matters, 18 Pa. C.S. § 903(a)(1); 2) official oppression, 18 Pa. C.S. § 5301; and 3) false swearing in official matters, 18 Pa. C.S. § 4903(a)(1-2)). These charges arose out of the March 21, 2008 search warrant affidavit, which erroneously stated that Plaintiff had seen Huber leaving his house when in fact she had not. (Compl. ¶¶ 57-58.) Corporal Neal averred that:

> On January 8, 2009 I reviewed a copy of the search warrant and affidavit bearing Burgettstown Police incident number 127-08. This was signed by District Justice Wilson and was to search the residence at 52 Dinsmore Rd., Burgettstown, PA. Harold Huber resides at this location. Huber had been arrested earlier on a traffic stop and the affidavit of probable cause was based on details of that stop including a stated fact that Price had seen Huber leaving his residence immediately prior to the traffic stop. Additionally, Price submitted a police report reviewed by me stating that she had seen him leaving the residence immediately prior to the traffic

stop.

(Compl. ¶ 60 & Ex. A at 6.)

Plaintiff states that her actual police report stated that:

> On Friday 21 March 2008 at 2122 hours, I was getting into my police car in the parking lot of the police department when Officer North with Smith Township Police contacted me. Officer North advised me that he was coming out of Frances Mine on Maple Road, following a Dodge Ram with a burnt out license plate lamp. I advised Officer North to initiate a traffic stop until I arrive. Officer North initiated the traffic stop on Main Street in Burgettstown directly in front of the Burgettstown Police Department. When Officer North approached the driver side of the vehicle, he spoke with the driver who identified himself as Harold Huber. As Officer North was speaking with Huber, I walked up to the driver side of the vehicle and could smell a strong odor of burnt marijuana emanating from inside of the vehicle. After Officer North gave Huber back his drivers license and registration, I asked Huber to step out of the vehicle. Huber stepped out and walked to the rear of his vehicle and was told to keep his hands out of his pockets. Huber kept making furtive movements by attempting to put his hands into his pockets. Huber was told to place his hands on the tail gate of the truck and was searched for weapons. As Huber's left side pants pocket was being searched, a foreign object was felt. After going into Huber's pants pocket, Officer North located a baggy containing two individually packaged baggies of cocaine.
>
> After completing a search of Huber's person, Officer North located four one hundred dollar bills in his back pants pocket and sixty four dollars in his wallet. I then searched the immediate area of the vehicle and located two burnt marijuana joints in the ashtray along with two packages of rolling papers.
>
> Huber was arraigned at Hanover Townships Station in front of Judge Wilson. Huber was placed in Washington county jail on $10,000 straight bond.
>
> Judge Wilson consented to a search warrant of 52 Dinsmore due to the fact the actor left the residence with the drugs….

(Compl. ¶¶ 62-63 & Ex. B at 1-2.) She also alleges that her complaint affidavit was identical to the police report. (Compl. ¶¶ 64-65 & Ex. C.) Thus, neither the police report nor the complaint affidavit explicitly stated that Plaintiff saw Huber leaving his residence immediately prior to the vehicle stop although, as the PSP Defendants note, these documents did state that Huber "left his residence with the drugs," thereby implying that someone saw this take place.

On or about February 4, 2009, Plaintiff was advised by the Borough of Burgettstown that she was suspended pending disposition of the criminal charges against her. She states that she has never returned to her position as a Burgettstown police officer. (Compl. ¶ 70.)

Preliminary Hearing

On March 18, 2009, Plaintiff's preliminary hearing was conducted before Magisterial District Judge James Ellis. Assistant District Attorney Joshua Carroll of the Washington County District Attorney's Office appeared for the prosecution and Plaintiff was represented by Attorney Dennis Paluso. A.D.A Carroll's only witness was Corporal Neal, who repeatedly made the false assertion that Plaintiff had stated in her police report that she had seen Huber leaving his house on the date he was arrested. (Compl. ¶¶ 72-78.) At the close of the preliminary hearing, the charges against Plaintiff were dismissed. (Compl. ¶ 79.)

Charges are Re-filed

However, on March 23, 2009, Corporal Neal re-filed a criminal complaint, charging Plaintiff with the same crimes as before, and adding another count of false swearing in official matters, 18 Pa. C.S. § 4903(a)(1-2). Plaintiff alleges that Corporal Neal took this action at the direction of or with the approval of D.A. Toprani and that the intent was to harass her for complaining about the video camera placed in the room where she dressed and undressed. (Compl. ¶¶ 83-84, 89.)

In addition, on that same date, D.A. Toprani filed a Motion for Temporary Assignment of Issuing Authority before Judge Debbie O'Dell Seneca of the Court of Common Pleas of Washington County, alleging that the prosecution had met its burden of presenting a prima facie case and that Magisterial District Judge Ellis had committed unspecified errors of law. On that same date, and without granting a hearing, Judge Seneca granted the motion and reassigned the

case to Senior Magisterial District Judge Marjorie Teagarden. (Compl. ¶¶ 87-88, 90 & Exs. D, E.)

Plaintiff's counsel, Attorney Paluso, filed a motion to vacate the reassignment order. On September 3, 2009, the charges against Plaintiff before Senior Magisterial District Judge Teagarden were withdrawn. Plaintiff alleges that the charges were withdrawn to avoid disclosure of the allegations made in Attorney Paluso's motion to vacate, namely that the charges had been brought against her to retaliate for her having complained about the hidden video camera. (Compl. ¶¶ 91-95.)

Plaintiff alleges that neither Chief Detective Aaron nor D.A. Toprani referred the investigation of the hidden video camera to the Attorney General's Office. Rather, they directed Plaintiff to submit information to McDonald Borough Police Chief Mark Dorsey to conduct some sort of "review" of the hidden camera incident. On February 20, 2009, Plaintiff submitted information to Chief Dorsey, but she has not received any information about the status of this review. (Compl. ¶¶ 96-99.)

Procedural History

Plaintiff filed this action on November 26, 2010. The complaint contains a variety of claims in 27 counts, as follows: 1) her right to substantive due process under the Fourteenth Amendment was violated when the hidden video camera was placed in the room at the police station by Chief Roberts (Count 1), Chief Detective Aaron (Count 2) and D.A. Toprani (Count 3); 2) she was subjected to a malicious prosecution under state law when charges were filed against her on February 5, 2009 by Corporal Neal (Count 4) and D.A. Toprani (Count 6), and again upon the re-filing of the same charges against her (plus an additional charge) on March 23, 2009 by Neal (Count 5) and Toprani (Count 7), and her rights under the Fourth Amendment

were also violated by the filing of these charges against her without probable cause by Neal (Count 8) and Toprani (Count 9); 3) Corporal Neal's misrepresentations at the preliminary hearing on March 18, 2009 denied her the right to a fair trial in violation of the Sixth Amendment (Count 10); 4) she was subjected to an abuse of process under state law when she was prosecuted by Neal (Count 11) and Toprani (Count 12) and this prosecution also constituted an abuse of process in violation of the Fourth Amendment (Counts 13-14); 5) she was subjected to false imprisonment under state law when she was interrogated by Neal (Count 15), Toprani (Count 16) and Trooper Borello (Count 17) and these interrogations also violated her rights under the Fourth Amendment (Counts 18-20); 6) she was denied equal protection of the laws when the Borough (Count 21) and Chief Roberts (Count 22)[2] refused to provide her with a locker as the male police officers received; 7) this denial by the Borough (Count 23) and Chief Roberts (Count 24) also violated her rights under Title VII of the Civil Rights Act of 1964; 8) PSP Commissioner Pawlowski failed to train Corporal Neal and Trooper Borello and/or acquiesced in their wrongful conduct (Count 25); 9) Washington County failed to train Chief Detective Aaron and/or condoned his wrongful conduct (Count 26); and 10) the Borough failed to train Chief Roberts and/or condoned his wrongful conduct (Count 27).

On February 15, 2011, the PSP Defendants filed a motion to dismiss (ECF No. 13). On March 24, 2011, the Washington County Defendants filed an answer to the complaint (ECF No. 19). On April 6, 2011, the Burgettstown Defendants filed a motion to dismiss Counts 23 and 24 of the complaint (ECF No. 27). However, at a case management conference on April 28, 2011, Plaintiff agreed that this motion should be granted and the Title VII claims have been dismissed

[2]Beginning with Count 20, the Complaint returns to the number 18 and erroneously counts forward to 25. As the parties have done in their briefs, the Court will identify the counts by their proper numbers.

from the case (ECF No. 31). On May 5, 2011, the Burgettstown Defendants filed an answer to the complaint (ECF No. 32). Therefore, only the PSP Defendants' motion and Counts 4, 5, 8, 10, 11, 13, 15, 17, 18, 20 and 25 are at issue.

Standard of Review for Motion to Dismiss

The Supreme Court has recently stated that:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [Bell Atlantic Corp. v.] Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 [(2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant- unlawfully-harmed-me accusation. Id., at 555, 127 S.Ct. 1955 (citing Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S.Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id., at 557, 127 S.Ct. 1955.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id., at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id., at 557, 127 S.Ct. 1955 (brackets omitted).

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

The Court of Appeals for the Third Circuit has held that: "Although a district court may not consider matters extraneous to the pleadings, 'a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.'" U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)). Thus, the affidavits of probable cause, Plaintiff's police report, the motion to reassign the case and the

order granting this motion, which are referred to in the complaint and attached thereto, may be considered without converting the motion into one for summary judgment.

The PSP Defendants argue that: 1) they are immune from Plaintiff's claims against them in their official capacities pursuant to the Eleventh Amendment; 2) Plaintiff fails to state a claim for malicious prosecution in violation of the Fourth Amendment because she has not alleged that she was subjected to a "seizure," nor do her allegations state a Fourth Amendment claim for abuse of process or false imprisonment; 3) assuming that a preliminary hearing implicates the Sixth Amendment right to a fair trial, the charges against her were dismissed at the conclusion of this hearing and therefore she cannot state a claim arising therefrom; 4) she cannot hold Commissioner Pawlowski liable under a theory of respondeat superior and she has not alleged that he was personally involved in the commission of a wrong; and 5) Plaintiff's state law intentional tort claims (abuse of process, malicious prosecution and false imprisonment) against Neal and Borello are barred by the doctrine of sovereign immunity.

Plaintiff has not responded to the sovereign immunity argument, the argument concerning the Sixth Amendment claim, or the argument regarding Commissioner Pawlowski, and she has not directly responded to the PSP Defendants' Eleventh Amendment immunity argument. Rather, she argues in her brief in response that the motion to dismiss "must be denied and/or Plaintiff must be granted leave to amend to proceed against Defendants Neal and Borello, in their individual capacities, with respect to" Counts 8, 13, 18 and 20. (ECF No. 18 at 1.) In addition, Plaintiff argues that: 1) she must be permitted to amend her complaint to incorporate a claim under the First Amendment for retaliation in the form of a prosecution; 2) she was "seized" for purposes of a Fourth Amendment malicious prosecution claim; 3) she has stated a claim for false imprisonment under § 1983; and 4) she has stated a claim for abuse of process under § 1983 and

she should also be permitted to amend her complaint to allege more particular facts in support of this claim.

Eleventh Amendment Immunity

The PSP Defendants argue that they are entitled to Eleventh Amendment immunity with respect to the official capacity claims asserted against them in Counts 4, 5, 8, 10, 11, 13, 15, 17, 18, 20 and 25. Plaintiff has not directly responded to this argument.

The Eleventh Amendment provides:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. The Supreme Court has stated that the presupposition confirmed by the Eleventh Amendment is that "federal jurisdiction over suits against unconsenting states was not contemplated by the Constitution when establishing the judicial power of the United States." Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996) (internal citation omitted). The immunity applies not only to the state itself, but also to state agents and state instrumentalities. Thus, courts must examine the essential nature and effect of the proceeding, the nature of the entity created by state law or the issue of whether a money judgment against the instrumentality would be enforceable against the state to determine whether the instrumentality should be treated "as an arm of the state." Regents of the University of Calif. v. Doe, 519 U.S. 425, 429-30 (1997).

The Pennsylvania State Police is an arm of the state for Eleventh Amendment immunity purposes. See Altieri v. Pennsylvania State Police, 2000 WL 427272, at *5 (E.D. Pa. Apr. 20, 2000). In addition, Defendants Neal, Borello and Pawlowski, in their official capacities, are state agents who would be entitled to Eleventh Amendment immunity. Kentucky v. Graham, 473

U.S. 159, 166 (1985). See also Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 & n.10 (1989) (except when sued for injunctive relief, state officials in their official capacities are not "persons" for purposes of § 1983). The immunity applies to both federal and state law claims. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89 (1984).

The Court of Appeals for the Third Circuit has indicated that:

> Eleventh Amendment immunity is, however, subject to three primary exceptions: (1) congressional abrogation, (2) waiver by the state, and (3) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law. The third exception ... is the doctrine of Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed.714 (1908).

Pennsylvania Federation of Sportsmen's Clubs, Inc. v. Hess, 297 F.3d 310, 323 (3d Cir. 2002) (citation omitted). Pennsylvania has not consented to waive its Eleventh Amendment immunity to being sued in federal court. 42 Pa. C.S. § 8521(b); Chittister v. Department of Cmty. & Econ. Dev., 226 F.3d 223, 227 (3d Cir. 2000). In addition, the Supreme Courts has held that § 1983 does not abrogate states' sovereign immunity. Quern v. Jordan, 440 U.S. 332, 339-46 (1979).

With respect to the third exception, the Court of Appeals has explained that:

> The theory behind Young is that a suit to halt the enforcement of a state law in conflict with the federal constitution is an action against the individual officer charged with that enforcement and ceases to be an action against the state to which sovereign immunity extends; the officer is stripped of his official or representative character and becomes subject to the consequences of his individual conduct. The relief sought must be prospective, declaratory, or injunctive relief governing an officer's future conduct and cannot be retrospective, such as money damages.

MCI Telecommunication Corp. v. Bell Atlantic-Pa., 271 F.3d 491, 506 (3d Cir. 2001) (citations omitted).

"In determining whether the doctrine of Ex parte Young avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as

prospective." Verizon Md., Inc. v. Public Service Comm'n of Md., 535 U.S. 635, 645 (2002) (citation omitted). Plaintiff has not alleged an ongoing violation of federal law. Rather, she alleges that the PSP Defendants violated her rights in the past when they interrogated her, charged her with crimes and the re-filed the charges after they were dismissed, and she seeks monetary damages as relief. Therefore, the Eleventh Amendment applies to foreclose suit against the PSP Defendants in their official capacities. With respect to Counts 4, 5, 8, 10, 11, 13, 15, 17, 18, 20 and 25, as alleged against the PSP Defendants in their official capacities, the motion to dismiss will be granted and these claims will be dismissed.

Fourth Amendment Claims

In Counts 8, 13, 18 and 20, Plaintiff alleges that she was maliciously prosecuted, subjected to an abuse of process and subjected to false imprisonment by Corporal Neal and Trooper Borello, all in violation of her rights under the Fourth Amendment. The PSP Defendants argue that Plaintiff has not stated a claim under any of these causes of action. Plaintiff responds that she has alleged all the elements necessary to state these claims and in addition requests leave to amend her complaint with respect to the abuse of process claim.

The Court of Appeals for the Third Circuit has stated that:

> To prove malicious prosecution under section 1983 when the claim is under the Fourth Amendment, a plaintiff must show that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

Johnson v. Knorr, 477 F.3d 75, 81-82 (3d Cir. 2007) (citing Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003) (footnote omitted).

The PSP Defendants note that Plaintiff has not alleged that she suffered a deprivation of

liberty consistent with the concept of a seizure as a consequence of a legal proceeding and therefore they argue that she cannot maintain a claim for malicious prosecution. In DiBella v. Borough of Beachwood, 407 F.3d 599 (3d Cir. 2005), the plaintiffs were issued a summons but not arrested, never posted bail, were free to travel and did not have to report to Pretrial Services. Their liberty was restricted only during the municipal court trials they attended. The court held that "[p]retrial custody and some onerous types of pretrial, non-custodial restrictions constitute a Fourth Amendment seizure," but the plaintiffs "failed to state a cause of action for malicious prosecution because their attendance at trial did not qualify as a Fourth Amendment seizure." Id. at 603. The PSP Defendants argue that being given a citation, being subjected to "custodial interrogations" and attending a preliminary hearing are not sufficient for Fourth Amendment purposes.

Plaintiff cites Gallo v. City of Philadelphia, 161 F.3d 217 (3d Cir. 1998). In that case, which the Court of Appeals described as a "close question," id. at 222, the plaintiff had been required to post bond, prohibited from traveling beyond New Jersey and Pennsylvania and instructed to contact Pretrial Services weekly. In distinguishing Gallo, the court in DiBella observed that the plaintiffs never posted bail, they were free to travel and did not have to report to Pretrial Services. Their liberty was restricted only during the Municipal Court trials. The court held that "[a]ttending one's trial is not a government 'seizure' in a 42 U.S.C. § 1983 malicious prosecution action for violation of the Fourth Amendment." 407 F.3d at 603. See also Johnson, 477 F.3d at 85 n.14 (Johnson's detention in cell at the police station for approximately two days until he could make bail constituted a deprivation of liberty consistent with the concept of a seizure as a consequence of a legal proceeding); Hanks v. County of Del., 518 F. Supp. 2d 642, 651 (E.D. Pa. 2007) (having to appear at a hearing is insufficient); Benard v. Washington

County, 465 F. Supp. 2d 461, 469 (W.D. Pa. 2006) (plaintiff was arrested but released on her own recognizance, was required to notify the court and bail authority if she changed her address and was required to attend court proceedings, not amounting to a deprivation of liberty consistent with a Fourth Amendment seizure); Colbert v. Angstadt, 169 F. Supp. 2d 352, 356 (E.D. Pa. 2001) (receiving a summons in the mail and being required to appear in court were insufficient impositions on plaintiff's liberty for Fourth Amendment purposes).

Plaintiff "acknowledges the weight of authority cited by the PSP Defendants indicating that a Section 1983 Fourth Amendment malicious prosecution claim requires the 'deprivation of a substantive liberty interest.'" (ECF No. 18 at 8.) She also "admits that she only received her summons via the mail and was only required to attend her March 18, 2009 Preliminary Hearing." (ECF No. 18 at 9.) However, Plaintiff argues that this Court should follow Justice Ginsburg's concurring opinion in Albright v. Oliver, 510 U.S. 266 (1994), and cites Graw v. Fantasky, 68 Fed. Appx. 378 (3d Cir. 2003) and Roskos v. Sugarloaf Township, 295 F. Supp. 2d 480 (M.D. Pa. 2003), as cases that followed Justice Ginsburg's analysis to find a "seizure" for a Fourth Amendment malicious prosecution claim when plaintiffs were forced to defend themselves against criminal charges. However, Graw is a non-precedential opinion and Roskos is a district court case without any precedential authority, and -- more significantly -- both of these cases predate the DiBella case, which directly answers the question presented. Indeed, in DiBella, the court explicitly rejected the plaintiffs' attempt to rely on Graw, a non-precedential opinion. 407 F.3d at 602 n.**** And Roskos was attempting to predict how the Court of Appeals would rule, a prediction that proved to be erroneous in DiBella. See Basile v. Township of Smith, 752 F. Supp. 2d 643, 659 (W.D. Pa. 2010) (Lenihan, M.J.)

Plaintiff acknowledges that, in DiBella, "the Third Circuit did not follow Justice

Ginsburg's analysis" and has not done so since then. (ECF No. 18 at 9.) She argues nonetheless that this Court should depart from DiBella, something this Court cannot do. This Court is bound to follow the holdings of the Court of Appeals, and DiBella holds that Plaintiff's situation does not present a seizure for Fourth Amendment malicious prosecution purposes. Therefore, Count 8 will be dismissed. As explained below, Plaintiff may not amend the complaint with respect to this claim because no amendment would surmount the legal barrier this claim encounters.

With respect to the abuse of process claim in Count 13, the PSP Defendants argue that Plaintiff's allegations do not meet the standard for it. "In contrast to a section 1983 claim for malicious prosecution, a section 1983 claim for malicious abuse of process lies where 'prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law.'" Rose v. Bartle, 871 F.2d 331, 350 n.17 (3d Cir. 1989) (quoting Jennings v. Shuman, 567 F.2d 1213, 1217 (3d Cir. 1977)). The PSP Defendants argue that Plaintiff is alleging that Corporal Neal filed and re-filed charges against her without probable cause, in order to harass her and/or retaliate against her for complaining about the hidden video camera. They contend that such allegations fall under the category of malicious prosecution, not abuse of process (although, for the reasons stated above, the malicious prosecution claims are insufficient).

Plaintiff responds that she is also alleging the Corporal Neal continued to abuse the process by testifying falsely against her at the preliminary hearing and by re-filing the same charges against her after they were dismissed. In addition, a motion was filed to reassign the case to another magisterial district judge for unknown "errors of law." The Court of Appeals has stated that "if a process is wrongfully initiated and thereafter perverted, both torts lie. Hence, the torts are not mutually exclusive." Jennings, 567 F.2d at 1218. She also contends that the

charges were not filed for a legitimate purpose, but rather to harass and retaliate against her for complaining about the hidden video camera. The Court of Appeals has indicated that "using legal process primarily to harass and cause direct injury to an adversary … could constitute a perversion of that process." General Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 307 (3d Cir. 2003).

Finally, she requests leave to amend the complaint to allege that Defendants wrongfully used criminal proceedings to coerce her to drop the matter of the hidden video camera, to cause her to be suspended from the Burgettstown police department, to subject her to humiliating publicity and the embarrassment of having charges filed against her and to force her to spend substantial sums of money defending against baseless charges. The Court concludes that Plaintiff's allegations are sufficient to state a claim for abuse of process.[3] In addition, Plaintiff may amend the complaint to include the additional allegations described in her brief. Therefore, Count 13 (as alleged against Corporal Neal in his individual capacity) will not be dismissed.

With respect to the false imprisonment claim, the PSP Defendants argue that it requires an unlawful "detention" and that Plaintiff cannot cite to the interrogations on January 8 and 14, 2009 because she was not charged with a crime until February 5, 2009. They cite Barna v. Perth Amboy, 42 F.3d 809, 820 (3d Cir. 1994). However, in that case, in which the plaintiff was arrested and transported to the police station, the court merely described the situation as one in which the plaintiff could state claims for both false arrest and false imprisonment. The court did

---

[3]The PSP Defendants contend that Plaintiff has failed to distinguish Napier v. City of New Castle, 2010 WL 4243893 (3d Cir. Oct. 28, 2010), in which the court stated that "there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." Id. at *3. Setting to one side the fact that Napier is a non-precedential decision, it is distinguishable because Corporal Neal's act of re-filing the charges against Plaintiff after they were dismissed goes beyond merely "carrying out the process to its authorized conclusion."

not hold that false imprisonment can only follow an arrest.

In fact, the elements of false imprisonment are "(1) the detention of another person, and (2) the unlawfulness of such detention."  Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994).  In a case in this Court, former District Judge (now Court of Appeals Judge) Hardiman responded to the defendants' argument that a false imprisonment claim requires an arrest:

> There are two responses to this argument. First, insofar as "arrest" means a formal placement into custody effectuated by law enforcement, Defendants' proposition is incorrect under Renk. See id. at 295 n. 2 (Montemuro, J., dissenting on other grounds) (false arrest claims are merely a subset of false imprisonment claims); accord Wallace v. Kato, [549] U.S. [384, 388], 127 S.Ct. 1091, 1095, [166] L.Ed.2d [973] (2007) ("False arrest and false imprisonment overlap; the former is a species of the latter."); see also, e.g., Pearson v. Pearson, 29 Misc. 2d 677, 212 N.Y.S.2d 281, 283-84 (Sup. Ct. 1961) (false imprisonment claim survives "even absent an actual arrest"), cited in 35 C.J.S. False Imprisonment § 13 at n. 6 (2006).
>
> Second, although Pennsylvania courts have held that "false arrest" is synonymous with "false imprisonment," see Gagliardi v. Lynn, 446 Pa. 144, 285 A.2d 109, 111 (Pa. 1971); see also, e.g., Karkut v. Target Corp., 453 F. Supp. 2d 874, 879 (E.D. Pa. 2006); Brockington v. City of Phila., 354 F. Supp. 2d 563, 570 n. 8 (E.D. Pa. 2005), what they mean is that in the context of cases involving arrest, the standards for evaluating the two causes of action are the same. Gagliardi and its progeny do not imply, let alone hold explicitly, that the tort of false imprisonment disappears altogether even in situations without a formal in-custody arrest by police.

Pope v. Rostraver Shop and Save, 2007 WL 776115, at *3 (W.D. Pa. Mar. 9, 2007).

Plaintiff argues that she was twice subjected to "investigatory detentions" without probable cause and therefore she can state a claim for false imprisonment in violation of the Fourth Amendment because she reasonably believed she could not terminate the interrogations, particularly when she was told she could not do so.  She cites Glass v. City of Philadelphia, 455 F. Supp. 2d 302, 345 (E.D. Pa. 2006), in which a police policy of detaining citizens for investigation without probable cause allowed the plaintiffs to state a Fourth Amendment claim, citing Dunaway v. New York, 442 U.S. 200, 206-07 (1979).  This argument might suggest that

another Fourth Amendment cause of action more accurately describes this situation. See, e.g., United States v. Smith, 575 F.3d 308, 312-13 (3d Cir. 2009) (distinguishing between a situation in which police merely approach individuals on a street or in other public places to ask questions and request identification and Fourth Amendment seizure situations in which an officer, "by means of physical force or show of authority, has in some way restrained the liberty of a citizen"). However, that issue is not before the Court.

Plaintiff's allegations are sufficient to state a claim for false imprisonment. Therefore, with respect to Counts 18 and 20 as alleged against Corporal Neal and Trooper Borello in their individual capacities, the motion to dismiss will be denied. In addition, Plaintiff may amend the complaint as to these claims if she wishes to do so.

Sixth Amendment Claim

In Count 10, Plaintiff alleges that Corporal Neal's false testimony against her at the preliminary hearing denied her a fair trial in violation of her rights under the Sixth Amendment. The PSP Defendants argue that, assuming that the Sixth Amendment applies to a preliminary hearing, the result of the hearing was that the charges against her were dismissed and therefore she cannot state a Sixth Amendment claim. Plaintiff has not responded to this argument.

Federal courts have addressed this issue in several contexts. In Hensely v. Carey, 818 F.2d 646 (7th Cir. 1987), the plaintiff alleged that he was denied his right to a fair trial based upon an unduly suggestive police lineup, even though the charges were dropped prior to trial. The court held that Hensley "could not possibly have been deprived of his right to a fair trial since he was never tried." Id. at 649. See also Giuffre v. Bissell, 31 F.3d 1241, 1256 (3d Cir. 1994) (violation of the prophylactic Miranda rule did not state a constitutional claim; Fifth Amendment right is not to be compelled to be a witness against oneself at trial and unless and

until that occurs, no claim arises).

In Morgan v. Gertz, 166 F.3d 1307 (10th Cir. 1999), the plaintiff alleged that he was denied a fair trial when the police destroyed exculpatory evidence prior to his criminal trial, even though he was acquitted. The court stated that:

> Cases involving § 1983 actions brought by individuals alleging violations of constitutional rights arising out of lack of disclosure or preservation of exculpatory evidence in criminal prosecutions fall into two distinct categories. In the first group of cases, all criminal charges were dismissed prior to trial. Under such circumstances, courts have held universally that the right to a fair trial is not implicated and, therefore, no cause of action exists under § 1983. See Rogala v. District of Columbia, 161 F.3d 44, 55-56 (D.C. Cir. 1998) (per curiam); Taylor v. Waters, 81 F.3d 429, 435-36 & n. 5 (4th Cir. 1996); McCune v. City of Grand Rapids, 842 F.2d 903, 907 (6th Cir. 1988); Nygren v. Predovich, 637 F. Supp. 1083, 1087 (D. Colo. 1986). In the second group of cases, convictions were obtained and affirmed on direct appeal, but were subsequently overturned by way of collateral proceedings. In these cases, courts have permitted the exonerated defendant to pursue § 1983 claims based on the denial of a fair trial. See McMillian v. Johnson, 88 F.3d 1554, 1566-69 & n. 12 (11th Cir. 1996); McDonald v. Illinois, 557 F.2d 596, 603 (7th Cir. 1977).

Id. at 1310. The court held that the case fit within the first category: "Regardless of any misconduct by government agents before or during trial, a defendant who is acquitted cannot be said to have been deprived of the right to a fair trial." Id.

In this case, Plaintiff was not brought to trial. Rather, at the preliminary hearing where she contends the wrongful conduct by the state police occurred, the result was that the charges were dismissed. Therefore, whether this case is analyzed as a situation in which Plaintiff was not brought to trial at all[4] or one in which the "trial" resulted in the charges being dismissed, she cannot state a Sixth Amendment claim for denial of a fair trial based on the facts alleged herein.

[4]The Supreme Court has held that the right to counsel, which is also guaranteed by the Sixth Amendment, applies to a preliminary hearing. McNeil v. Wisconsin, 510 U.S. 171, 175 (1991). However, the right to "a fair trial" to which Plaintiff refers is not what the Sixth Amendment actually provides. Rather, it speaks of the right to a trial "by an impartial jury," which cannot easily be applied to a preliminary hearing, a proceeding conducted without a jury. The Court need not resolve this issue.

The PSP Defendants' motion will be granted and Count 10 will be dismissed.

Claim Against Commissioner Pawlowski

In Count 25, Plaintiff alleges that former PSP Commissioner Pawlowski failed to train Corporal Neal and Trooper Borello and/or acquiesced in their wrongful conduct. The PSP Defendants argue that she cannot hold Commissioner Pawlowski liable under a theory of respondeat superior and she has not alleged that he was personally involved in the commission of a wrong. Plaintiff has not responded to this argument.

The Court of Appeals for the Third Circuit has recognized two theories of supervisor liability:

> one under which supervisors can be liable if they "established and maintained a policy, practice or custom which directly caused [the] constitutional harm," and another under which they can be liable if they "participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations."

Santiago v. Warminster Township, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (quoting A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Ctr., 372 F.3d 572, 586 (3d Cir. 2004)). The court also noted that, in light of the Supreme Court's decision in Iqbal, "it is uncertain whether proof of such personal knowledge, with nothing more, would provide a sufficient basis for holding [defendant] liable with respect to plaintiffs' Fourteenth Amendment claims." Id. at 130 n.8 (quoting Bayer v. Monroe, 577 F.3d 186, 190 n.5 (3d Cir. 2009)). Nevertheless, even assuming that knowledge and acquiescence is still a viable theory, the court in Santiago concluded that the plaintiff's allegations—that supervisory personnel knew of and acquiesced in a plan to conduct a raid of her home with excessive force during which she suffered a heart attack—were insufficient to meet the plausibility standard of Iqbal.

"To be liable in this situation, a supervisor must have been involved personally, meaning

through personal direction or actual knowledge and acquiescence, in the wrongs alleged." McKenna v. City of Phila., 582 F.3d 447, 460 (3d Cir. 2009) (citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). Plaintiff has not even alleged that Commissioner Pawlowski had advance knowledge of or involvement in the violations allegedly committed by Corporal Neal and Trooper Borello. Therefore, with respect to Count 25, the motion to dismiss will be granted and this claim will be dismissed.

Sovereign Immunity

State officials such as state police officers are immune from suit for the intentional acts they allegedly commit within their scope of office or employment. 1 Pa. C.S. § 2310; 42 Pa. C.S. §§ 8501, 8521(a), 8522. As summarized by the Pennsylvania Commonwealth Court:

> it is well established that sovereign immunity is the law in Pennsylvania and is grounded in Article 1, § 11 of the Pennsylvania Constitution. E-Z Parks, [Inc. v. Philadelphia Parking Auth., 532 A.2d 1272, 1276 (Pa. Commw. 1987)]. At 1 Pa. C.S. § 2310 the legislature provided that the Commonwealth and its officials acting within the scope of their duties enjoy sovereign and official immunity and are immune from suit except when and where the legislature specifically provides otherwise.
>
> At 42 Pa. C.S. § 8522(b), the legislature specifically waived sovereign immunity in nine areas. In the present case, Faust's action is against the State and its officials acting in their official capacity. Clearly, the defendant-appellees enjoy the immunity provided by 1 Pa. C.S. § 2310. Further, intentional tort claims and civil rights actions are not within the narrow exceptions set forth in 42 Pa. C.S. § 8522(b). Accordingly, we conclude that Faust's claims against the Department and its officials acting in their official capacity are barred by the doctrine of sovereign immunity.

Faust v. Commonwealth Dep't of Revenue, 592 A.2d 835, 839-40 (Pa. Commw. 1991) (footnotes omitted).

Counts 4, 5, 11, 15 and 17 allege intentional conduct by Defendants Neal and Borello by subjecting Plaintiff to a malicious prosecution, abuse of process and false imprisonment. The statute lists nine negligent acts for which recovery against the local agency is permitted. 42 Pa.

C.S. § 8522(b). Pennsylvania courts have held that "intentional tort claims … are not within the narrow exceptions set forth in 42 Pa. C.S. § 8522(b)." Faust, 592 A.2d at 839. Therefore, with respect to these claims, the PSP Defendants' motion will be granted and these claims will be dismissed based on the doctrine of sovereign immunity.

Request to Amend

Plaintiff requests leave to amend the complaint to proceed against Corporal Neal and Trooper Borello in their individual capacities with respect to Counts 8, 13, 18 and 20, to modify her allegations concerning the § 1983 claim for abuse of process against Corporal Neal in Count 13 and to allege a claim of retaliatory prosecution. As stated above, Plaintiff has already stated a claim for abuse of process and she may amend the complaint with respect to Count 13. She may also amend the complaint with respect to the § 1983 false imprisonment claims in Counts 18 and 20. However, Plaintiff's § 1983 malicious prosecution claim in Count 8 lacks an essential element that cannot be rectified on the facts of this case. Therefore, Plaintiff cannot amend the complaint with respect to this claim.

The PSP Defendants argue that the proposed retaliatory prosecution claim would fail to state a claim upon which relief could be granted and therefore it would be "futile" to allow her to amend the complaint to allege this claim.

This argument is unavailing for several reasons. First, Plaintiff does not need leave of Court to amend the complaint with respect to the PSP Defendants because she may do so once as matter of course within the time established to respond to a motion to dismiss pursuant to Rule 12(b), see Fed.R.Civ.P. 15(a)(1)(B). Second, even if this were not the case, the Court "should freely give leave when justice so requires," Fed.R.Civ.P. 15(a)(2). Moreover, an amendment to a complaint relates back to the date of the filing of the complaint when it "asserts a claim … that

arose out of the conduct, transaction or occurrence set out—or attempted to be set out—in the original pleading…" Fed.R.Civ.P. 15(c)(1)(B). Plaintiff's proposal would add a claim for retaliatory prosecution that arose out of the same conduct already set forth in the original complaint.

Third, the Court of Appeals has explained that: "Repleading is futile when the dismissal was 'on the merits.' A dismissal is on the merits when it is with prejudice or based on some legal barrier other than want of specificity or particularity." United States ex rel. Atkinson v. Pennsylvania Shipbuilding Co., 473 F.3d 506, 516 (3d Cir. 2007) (citation omitted). In this case, for example, Plaintiff could not amend the complaint to allege additional state law intentional tort claims against the PSP Defendants because such claims would encounter the sovereign immunity bar, as explained above. On the other hand, the PSP Defendants have not explained how this Court could render a dismissal "on the merits" of a claim that has not been previously alleged in the complaint and which contains entirely different elements from the claims that have been addressed on the merits.

Fourth, the PSP Defendants' citation to authority is not on point. Garcetti v. Ceballos, 547 U.S. 410 (2006), holds that, when public employees make statements pursuant to their official duties, they are not speaking as citizens for First Amendment purposes and the Constitution does not insulate their communications from employer discipline. They also cite Ambrose v. Township of Robinson, Pa., 303 F.3d 488, 493 (3d Cir. 2002), for the proposition that an employer must have knowledge of an employee's protected conduct before it can retaliate against that employee, and they argue that Plaintiff has not alleged with specificity that they were aware of her complaint about the hidden video camera. These cases have nothing to do with claims of retaliatory prosecution, which is what Plaintiff proposes to amend her complaint to

allege.  The PSP Defendants were not Plaintiff's employer and Garcetti and Ambrose are irrelevant to the actions of these defendants in this case.

For these reasons, the motion to dismiss filed by the PSP Defendants will be granted in part and denied in part, as follows: the motion will be granted with respect to Counts 4, 5, 8, 10, 11, 15, 17 and 25 and the official capacity aspect of the claims in Counts 13, 18 and 20.  The motion will be denied with respect to the individual capacity aspect of the claims in Counts 13, 18 and 20.  Finally, Plaintiff may amend the complaint to amplify her allegations regarding the § 1983 abuse of process claim against Corporal Neal in Count 13, to amplify her § 1983 false imprisonment claims against Corporal Neal and Trooper Borello in Counts 18 and 20, and to add a claim of retaliatory prosecution.  An appropriate order follows.